UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

CARMEN TAFOYA,

Plaintiff-Appellant, Case No. 25-1381

vs.

CITY OF FOOUNTAIN,

Defendant-Appellee.

---

# OPENING BRIEF

---

Appeal from the order granting a motion to strike and granting summary judgment by Magistrate Judge Braswell, United States District Court Magistrate Judge for the District of Colorado, Case No. 24-cv-884-MDB

Oral argument is requested.

Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St
Denver, CO 80206
Tel: 303-319-8382
COUNSEL FOR PLAINTIFF-APPELLANT

## I. CORPORATE DISCLOSURE STATEMENT

Not required by this party.

## II. TABLE OF CONTENTS


Jurisdictional statement ........ 3
Issues presented for review ........ 4
Statement of the case ........ 4
Statement of the facts ........ 5
The trial court's order ........ 18
Summary of argument ........ 21
Argument ........ 23
A *Prima Facie* Step Does Not Belong in a Cat's Paw Analysis . 23
Plaintiff Established a *Prima Facie* Case ........ 30
Plaintiff Supported Her Cat's Paw Theory ........ 34
The Court Erred in Striking Witness Miller ........ 38
Conclusion ........ 46
Certificate of compliance with Rules 25.3 and 32(a) ........ 46
Attachment 1, District Court Order filed September 22, 2025
Attachment 2, Judgment filed September 22, 2025


## III. TABLE OF AUTHORITIES


*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........ 42
*Bostock v. Clayton County*, 590 U.S. 644 (2020)........ 20, 38
*Cummings v. General Motors Corp*., 365 F.3d 944 (10th Cir. 2004) . 38
*EEOC v. BCI Coca-Cola Co*., 450 F. 3d 476 (10th Cir. 2006) .... 26-9, 34
*El Camino Res. v. Huntington Nat'l Bank*,
2009 WL 1228680 (W.D. Mich. 2009)........ 40
*Gray v. State Farm*, 145 F.4th 630 (6th Cir. 2025)........ 24
*Hittle v. City of Stockton*, 145 S.Ct. 759 (2025)........ 26
*Hollis v. Morgan State University*, 153 F.th 369 (4th Cir. 2025)........ 23
*Jenny v. L3Harris Tech, Inc*., 144 F.4th 1194 (10th Cir. 2025)........ 26
*Liberty Ins. Corp. v. Brodeur*, 40 F.4th 1185 (9th Cir. 2022)........ 39, 45
*Lobato v. Ford*, 2007 WL 2593485 (D. Colo. 2007)........ 44
*Marshall v. The Rawlings Co. LLC*, 854 F.3d 368 (6th Cir. 2017).. 24, 29
*Shager v. Upjohn Co*., 913 F.2d 398 (7th Cir. 1990)........ 37

*Simmons v. Sykes Ent., Inc.*, 647 F.3d 943 (10th Cir. 2011) ............... 24
*Smothers v. Solvay Chems., Inc.*, 740 F.3d 530 (10th Cir. 2014)....... 25
*Tara Woods Ltd. Ptrship v. Fannie Mae*, 265 F.R.D. 561
(D. Colo. 2010) ........................................................................ 44
*Unicolors, Inc. v. H&M, LP*, 595 U.S. 178 (2022) ................................ 32
*Ward v. Jewell*, 772 F.3d 1199 (10th Cir. 2014) .................................. 26
*Wells v. Colo. DOT*, 325 F.3d 1205 (10th Cir. 2003) ............................ 23
*Zamora v. Elite Logistics, Inc.*, 478 1160 (10th Cir. 2007) ................... 25

Rule 26(a)(1)(A)(i)........................................................................ 39, 40

## IV. STATEMENT OF RELATED CASES

There are no prior nor related cases.

## V. JURISDICTIONAL STATEMENT

The district court had jurisdiction over a federal question pursuant to 28 U.S.C. §1331 because plaintiff asserted a claim under the Age Discrimination in Employment Act, 29 USC §623.

This Court has jurisdiction pursuant to 28 U.S.C. §1291 because it is an appeal from a final order of summary judgment on all claims in favor of defendant. Final judgment was entered on September 22, 2025 (Apdx. 676), and Appellant filed her notice of appeal on October 2, 2025 (Apdx. 678).

## VI. ISSUES PRESENTED FOR REVIEW

1. Whether the trial court erred in applying the three-part *McDonnell Douglas* test to summary judgment on a cat's paw claim?

2. Whether the district court erred, when it applied the *McDonnell Douglas prima facie* test, in finding that the head of plaintiff's department did not have firsthand knowledge that a younger employee gave confidential information to plaintiff for which plaintiff was terminated but regarding which the younger employee was not even investigated?

3. Whether the district court erred in not even considering plaintiff's cat's paw theory in which subordinates deliberately misled the decision-maker into terminating plaintiff because the subordinates thought plaintiff was too old to work and was wearing out?

4. Whether the district court erred in striking the declaration testimony of plaintiff's immediate supervisor upon grounds that the subjects of the supervisor's information were not properly disclosed?

## VII. STATEMENT OF THE CASE

Plaintiff brought one claim of age discrimination. Apdx 8, ¶ 10. The parties consented to have a magistrate judge conduct all proceedings in this case. Apdx 2, ECF 7.

Plaintiff worked 51 years for the City of Fountain utilities department as a billing specialist. At the time of her termination on February 17, 2023, she was 72 years old. Plaintiff's husband had just purchased a house as a rental property and plaintiff wanted to find out if the renter would have to pay a utility deposit – if he had been a previous customer of the City with

good payment history, he would not have to pay a deposit. Plaintiff was at home on FMLA leave, so she called her colleagues in the office to find out if the renter had a previous payment history with the City. A 36-year-old colleague told her not only that the renter did not have good payment history, but that he was behind in payments from his prior residence.

Plaintiff was investigated for breach of confidentiality (in double-checking the renter when she returned to work) and for allegedly asking that the renter's deposit be waived. The decision-maker, City Manager Trainor, was told that plaintiff had asked that the deposit be waived, which this was not true.

Defendant filed a motion to strike the declaration testimony of witness Miller and a motion for summary judgment, both of which Magistrate Judge Braswell granted in the same order.

## VIII. STATEMENT OF THE FACTS

Although defendant's motion for summary judgment, with exhibits, is approximately 400 pages long, the dispositive facts for the issues that plaintiff has framed on appeal are relatively simple. Plaintiff Carmen Tafoya had worked in the City of Fountain's utility department for 51 years. Her husband bought a rental property in the City. Plaintiff was at home on

FMLA leave for her vertigo and called one of her colleagues in the utility department, Dana Daniels, to ask if the new renter had previously used City utilities. If he had, he could then qualify to have his utilities re-established without a deposit. Ms. Daniel told plaintiff that the renter owed a back payment and, upon plaintiff's return to work the next day, plaintiff, herself, checked that the renter had been a prior City customer. The City used the fact that plaintiff looked up the renter as the excuse to terminate plaintiff upon the false premise that she was using her position with the City to obtain a financial advantage.

The magistrate judge asked the parties to prepare a chart of facts which begins on page 29 of the appendix. Although such a chart is designed to simplify what facts are disputed and undisputed, in practice this does not necessarily work. Take fact 101 (at Apdx 53) as an example. Plaintiff submitted that "The Details of Violations in the termination letter (ex D) said that plaintiff 'attempted to influence other employees to gain favor for her tenant.'" The City replied as follows: "Undisputed that Ex. D contains the quoted language, but Plf ignores such was not the sole extent of that contained in Ex. D nor the report contained in Ex. 13, both of which

identify other facts and multiple policy violations." So, was plaintiff terminated for improper influence or not?

Or facts 103 and 104: "From this meeting, [City Manager] Trainor understood that plaintiff used information for her personal benefit and tried to get the renter's deposit waived. … The termination was based on no other facts," both of which were lifted from the city manager's deposition. The City replied that "Undisputed that such is included in the cited testimony from Mr. Trainor's personal deposition, but disputed that was all that Mr. Trainor testified to having considered when deciding to terminate Plf's employment. Mr. Trainor testified to other information as well." And "Undisputed that Mr. Trainor's personal deposition testimony speaks for itself, but disputed that all of his other testimony or the records he stated he considered and relied on don't contain other facts." The City did not say what the other facts were, so, again, did the city manager terminate plaintiff for using confidential information for her personal benefit and for trying to waive the renter's deposit or not? **Compare** plaintiff's simple admission to 80 of defendant's 93 facts at Apdx 29-49.

Given such ambiguity in the statement of facts, this may have caused the trial court's failure to understand that supervisor Robinson treated

plaintiff differently than he treated a younger employee, a major point on appeal discussed below.

Plaintiff submits that facts #101 through #123 (Apdx 53-59) are the dispositive facts and she reproduces them verbatim below.[1] That is, plaintiff submits that defendant's facts, #1-93, are not, with a few exceptions, important to the issues on appeal. The sentences in brackets below are intended as gloss to help this Court understand the facts. The citations to the record in the court below have been removed, but the fact numbers are preserved. Plaintiff begins with fact #100 because facts #94-95 concern Debbie Miller, plaintiff's immediate supervisor, whose declaration the court struck, the subject of the appeal *infra* at 38. Although Ms. Miller is important to plaintiff's case, plaintiff submits that she can prevail even without Ms. Miller's evidence.

The facts which plaintiff reproduces begin as follows: "In making the decision to terminate, [City Manager] Trainor relied on the facts in an already drafted corrective action form (the termination letter) and in the abbreviated investigation report. Fact #100 The Details of Violations in the

---

[1] Plaintiff understands that the City disputes plaintiff's facts but, in a motion for summary judgment, the only issue is whether plaintiff can support her side of the factual dispute.

termination letter said that plaintiff 'attempted to influence other employees to gain favor for her tenant.' As discussed below, this was not true. Fact #101 [This is the gist of plaintiff's cat's paw theory – the City subordinates intentionally misled the city manager by not telling him the exculpatory information.]

"[City Manager] Trainor had one meeting regarding plaintiff's termination with Don Blankenship (plaintiff's department head), Connie Brisnehan (the head of HR), and city attorney Troy Johnson. They walked Trainor through the two documents. #102 [The two documents were the above abbreviated investigation summary report (Apdx 351-59) and the corrective action form (Apdx 365-67).] From this meeting, Trainor understood that plaintiff used information for her personal benefit and tried to get the enter's deposit waived. #103[2] The termination was based on no other facts. #104

---

[2] This fact came from Trainor's deposition: "What did you understand, then, occurred on November 3 which caused you to decide to terminate Ms. Tafoya? A. Well, what happened was we have a city employee that used their position to access information about a private citizen, and they used that information to benefit themselves financially, and then on top of that, in order to get that potential renter to not have to pay or put down a deposit, then reached out to one or more other City employees to try to influence them – influence their decision to sort of waive the deposit." Apdx 434-35, pp. 15:19 – 16:4. "Q. Were there any other facts upon which you based

"Plaintiff had no performance issues. #104 (continued) The investigation report itself stated that plaintiff did not ask that the deposit be waived. 'Neither employee specifically recalled Mrs. Tafoya requesting said customer's deposit to be waived.' #105 [this quotation is found at Apdx 444, ¶ 2. The subordinates told Trainor in #103 that plaintiff did ask that the renter's deposit be waived.] There was no discussion of this fact in the above meeting with the decision-maker [Trainor]. #106 Trainor agreed that if plaintiff had simply asked whether the renter had to pay a deposit or was a prior customer (which is what plaintiff says she asked), this would not violate any City policy. #107 [In other words, had the subordinates told Trainor all the facts in the investigation, such as the above finding that plaintiff never asked that the deposit be waived, there would have been no basis to terminate plaintiff.]

---

the decision to terminate her besides she accessed her renter's information in the system and she asked someone to waive his – his deposit? Any other facts that you remember? A. No." *Id.* p. 19:13-18. Note that Trainor terminated plaintiff for looking up the renter's information when she returned to work. He made no reference to the younger employee, Dana Daniel, giving plaintiff the renter's numbers prior to plaintiff's return to work. Plaintiff said that the information she looked up upon her return to work was only whether the renter had been a prior City customer, which Trainor said did not violate policy. **See** fact 107.

"Trainor was unaware that another clerk in the office (Dana Daniel) had violated the same confidentiality policy [for which plaintiff was terminated] by telling plaintiff how much the renter owed. #108 [Even though the subordinates knew of the involvement by the younger employee Ms. Daniel,[3] she was never even investigated.] The assistant city attorney who did the investigation, Kaitlin Parker, was given the list of concerns from Connie Brisnehan [in HR]. #109 Mr. Robinson, plaintiff's second-level supervisor, initiated the investigation. #110 From day one, Robinson said plaintiff violated policy by "circumvent[ing] her potential tenant from paying a deposit." #111 Robinson sent Parker a November 3 text message that Dana Daniel had sent to plaintiff. The text said the following: "He [the renter] needs to go into office needs to pay bill of 220.86 and a $250.00

[3] Plaintiff recognizes that Robinson said he did not know of other employees who accessed information that the employee should not have accessed (fact 120, *citing* to Apdx 416:12-16), but that was disputed. He knew of the text between plaintiff and Daniel discussing the renter's confidential information, he knew plaintiff was at home at the time of the text, he knew plaintiff couldn't get the information on her own from home, and he knew that plaintiff texted the renter's numbers to Daniel and said she meant to send it to her son. He knew that plaintiff asked Daniel to call her. He knew that someone from the City had to give plaintiff the renter's numbers. It was not much of a stretch to suspect that Daniel provided the numbers to plaintiff in the phone call. But that is not the point. Robinson commenced the investigation of plaintiff, but not of the younger Daniel, in spite of the fact that he knew Daniel was involved in some way.

deposit and have them Move out your dad and put in his name… [As discussed below, plaintiff wrote this to her son but mistakenly sent it to Ms. Daniel.]"[4] #112[5]

"The context is as follows. Plaintiff wanted to find out if her husband's tenant had been a prior utility customer of the City. If so, he would not have to pay a deposit assuming he had good credit with the City. #113 Plaintiff did not know that, on the day before, November 2, the renter had already found out that he had to pay the deposit. #114 [Hence, the City's claim that plaintiff was requesting the renter's confidential information was somewhat moot because the renter already knew he had to pay the deposit and a prior balance.] On the day of plaintiff's call, November 3, she was at home on FMLA leave. She was not able to look up customer information from home. #115 She called Susan French and Mary Hawkins, both of whom were too busy to talk. She then called Ms. Daniel and left a voicemail. #116 At 12:39 [plaintiff] sent the above text message to Daniel

[4] This bracketed sentence is in the record below.

[5] In the third column of fact 112, the City claims that "Plf has not provided evidence showing Ms. Daniel relayed the monetary amounts in Pltf's text." Defendant's statement may have been premised on defendant's motion to strike plaintiff's declaration (it was not, **see** Apdx 670-71). At any rate, plaintiff explained in her declaration that she received the numbers from Daniel. Apdx 456, ¶ 4.

asking Daniel to call plaintiff. Daniel then called plaintiff and plaintiff gave Daniel the renter's address. #117 After looking into it, Daniel called plaintiff back and told her that the renter needed to pay a deposit and the delinquent $220.86, which information plaintiff mistakenly texted back to Daniel (she meant to send text to her son). #118

"The only way that plaintiff could have obtained the delinquent-payment information on November 3 was from Daniel [or someone else in the City] because plaintiff could not look up that information from home. #119 Robinson agreed that providing this information, as Ms. Daniel did, would certainly violate the policy [the same confidentiality policy for which plaintiff was terminated]. #120[6] Nonetheless, the City never tasked Ms. Parker with investigating Ms. Daniel for this policy violation. #121 [As stated above in fact #112, it was Robinson who forwarded to the investigator the Daniel's text where it was revealed what the renter owed. Nevertheless, no one suggested an investigation of Daniel's role. In short, the subordinates jumped on the alleged impermissible disclosure of confidential information to begin a process against the older plaintiff, while

[6] In the response column for this fact, the City cited to page 54 of Robinson's deposition, but the City did not submit that page to the trial court. **See** Apdx 416-17.

ignoring the younger Daniel's role in the same incident.] Ms. Daniel was 36 years old. #122 Before plaintiff's termination, [plaintiff] had worked 51 years in the utility department with the City. She was 72 years old at the time of her termination. She had had no discipline prior to her termination." #123

The judge below missed Daniel's own involvement in the purported breach of the City's confidentiality policy and Robinson's knowledge of same: "it is undisputed that Plaintiff's supervisors, Mr. Blankenship, Mr. Robinson, and Mr. Trainor (who made the decision to terminate Plaintiff) were all unaware of Ms. Daniel's purported conduct." Apdx 673. Exhibit H (Apdx 451-55) is the email that Robinson sent to investigator Parker, with the attached text messages between plaintiff and Ms. Daniel on the last page of the email, referred to as the attachment "Screensho.jpg" on the first page. Robinson forwarded the text message to city attorney Kaitlin Parker on December 6, 2022 (Apdx 451), which was two months before plaintiff's termination on February 17, 2023. **See** Apdx 46, the termination letter. The text message at issue (Apdx 455) reads as follows:

Thu, Nov 3 at 12:39 PM

| | |
|---|---|
| Plaintiff: | Dana can you please call me. |
| Dana Daniel: | Hi Carmen<br>I just spoke with Meri [a supervisor] and she stated that [the renter] needs to call and go through the new account process. |
| Plaintiff: | Thanks.<br><br>He needs to go into office needs to pay bill of 220.86 and a $250.00 deposit and have them Move out your dad [plaintiff thought she was sending this text to her son, Ramon] and put in his name<br><br>They need to run his name and ss#<br><br>Sorry Dana was trying to send to Ramon [plaintiff's son] |

This demonstrates at least a factual issue that Robinson could see that plaintiff received the renter's payment numbers from Daniel.

In the third paragraph on Apdx 454, Robinson concluded, a few hours after the phone call referenced in the above text message, that plaintiff "used her position and attempted to influence another employee to violate rules and regulations with transferring private account information on someone else's behalf and to circumvent her potential tenant from paying a deposit." He wrote this at 3:32 on the day of the incident, November 3. **See** the timestamp on the bottom of Apdx 453, three hours after the

timestamp on the text message. That is, he jumped to this conclusion without even talking to plaintiff who was at home on FMLA leave. Nor did he question Ms. Daniel's involvement in the matter when he forwarded the text message to the city attorney on December 6.

Contrary to Robinson's conclusion, the investigator found that plaintiff never asked that the deposit be waived. Apdx 444, ¶ 2: "Mrs. Tafoya contacted and spoke directly with two employees: … Neither employee specifically recalled Mrs. Tafoya requesting said customers deposit to be waived." Furthermore, from the text message, Robinson knew that plaintiff found out what the renter owed, he knew that plaintiff was at home on FMLA leave because of her vertigo (Apdx 456, ¶ 3), he knew that she did not have access to the numbers from home, he knew that plaintiff had asked Ms. Daniel to call her, but Robinson, as the manager, did not ask the investigator to investigate Ms. Daniel also. There is at least a factual question that he was treating the younger Ms. Daniel differently than he was treating the older plaintiff. And none of this was conveyed to the city manager. Either plaintiff's alleged malfeasance (disclosing what a City customer owed the City) was a serious infraction, as applied to plaintiff, or it was not serious, as applied to Ms. Daniel. It cannot be both.

There is a second factual issue on appeal. Defendant filed a motion to strike the declaration testimony of Deborah Miller, plaintiff's first line supervisor, because plaintiff allegedly did not disclose the facts of Miller's discoverable information with sufficient specificity. **See** defendant's motion, Apdx 526. Miller's declaration is found at Apdx 440. She was disclosed as the "supervisor under Mr. Robinson. She has information regarding how plaintiff performed her job ***and why she was terminated***." Apdx. 573, ¶ 4 (emphasis added).

Her declaration contains facts while her disclosure contains subjects, which is precisely the point. The dispositive issue is whether her disclosure complied with Rule 26(a)(1)(A)(i) because it disclosed the subjects of her information and disclosed that she would testify on this subject. There is nothing in the rule that says a party must disclose the facts that a witness will present.

***The Court's Order***

The court's order (Apdx 659-75) resolved both the motion to strike and the motion for summary judgment. Plaintiff first summarizes the summary-judgment order.[7]

The court recognized that an assistant city attorney investigated plaintiff. Apdx. 660. The court stated that plaintiff admitted that she asked Dana Daniel to look up the perspective renter. *Id.* When plaintiff returned to the office the next day, she herself looked up the renter and shared the information with her husband and son. *Id.* The court did not identify what information was shared, which makes a difference. As City Manager Trainor acknowledged, simply sharing whether a person had been a previous City customer would not violate any policy. Fact 107. And that is what plaintiff maintained she did when she returned to work. **See** Apdx 41, facts 51 and 52. The court did not comment on the dispute regarding what information plaintiff had disclosed to her husband and son.

[7] Both in summarizing the order and in arguing the two points on appeal, plaintiff discusses the summary judgment first. She does this so that this Court can see that granting summary judgment was error, even without the testimony of Ms. Miller. Of course, if this court finds that striking Miller's testimony was error, plaintiff's argument on summary judgment is all the stronger.

The court found that plaintiff could not satisfy her *McDonnell Douglas prima facie* burden because she could not show that she was treated less favorably than a younger employee. Apdx 673. The court said that "it is undisputed that Plaintiff's supervisors, Mr. Blankenship, Mr. Robinson, and Mr. Trainor (who made the decision to terminate Plaintiff) were all unaware of Ms. Daniel's purported conduct." Apdx 673. This is not correct. As stated above, plaintiff's second-level supervisor, Mr. Robinson, forwarded to the investigator the message that Ms. Daniel had told plaintiff over the phone that the renter needed to pay both the deposit and a past due bill. **See** fact 112. That is, Mr. Robinson knew a key fact in this case – plaintiff was terminated for looking up purported confidential information, but Ms. Daniel was not even investigated as to whether she provided the confidential information to plaintiff.

In the trial court's order, fn. 4 (Apdx 674), the court noted that although plaintiff had submitted a cat's paw theory of liability, the court stated that plaintiff did not support such a theory. The court cited to facts 38-47 and 81-91 which were facts that defendant presented.[8] Plaintiff's

[8] The court also discussed fact 93 on page 15 of her order, which fact stated that Blankenship and Robinson "were both not aware of any other employee who breached the confidentiality and other policies like Plf had."

cat's paw theory was presented in facts 101-123, set forth above. However, the court did not discuss facts 101-23.

The court then stated that "Plaintiff has provided no other evidence demonstrating animus towards a certain age group." Apdx 674. That is irrelevant because, as stated in *Bostock v. Clayton County*,590 U.S. 644, 658 (2020), the statute protects individuals, not groups, from discrimination. The trial court did not discuss any other facts that would circumstantially prove age discrimination.

The district court also struck the declaration testimony of Deborah Miller, plaintiff's immediate supervisor. At the beginning of the case, Ms. Miller was disclosed as stated above: she "has information regarding how plaintiff performed her job and why she was terminated." The court held, without any discussion, that in light of the facts set forth in Miller's declaration, this disclosure was inadequate; hence, she struck Ms. Miller's testimony. Apdx 663-69.

---

Plaintiff admitted this fact because she had no direct evidence that Blankenship (not Robinson) knew of Daniel's involvement. She admitted that Robinson did not know of other employees who "provided information she shouldn't to third parties." **See** Apdx 416:14-16, the deposition upon which fact 93 was based. That is, plaintiff admitted that Daniel did not provide the information to a third party. It was also clear that plaintiff presented evidence that Robinson knew of Daniel's potential breach of the same confidentiality policy.

## IX. SUMMARY OF ARGUMENT

First, it was error to apply the *McDonnell Douglas* test in a case based upon a cat's paw theory. The *McDonnell Douglas prima facie* test is designed to eliminate nonviable cases followed by an examination of whether the employer was telling the truth as to why it terminated the employee. To prove a cat's paw theory, on the other hand, a plaintiff must show that subordinates manipulated the decision-maker into terminating the plaintiff because of the subordinates' bias against the plaintiff. The two theories of proof are distinct and one should not be used to prove the other. The *McDonnell Douglas* test is designed to prove whether discrimination occurred *vel non*. On the other hand, a cat's paw theory concerns whether there was improper influence on the decision-maker. This particular issue is a case of first impression for this Court.

Second, notwithstanding the above, plaintiff satisfied the *prima facie* test. The trial court did not understand that plaintiff's supervisor, Mr. Robinson, knew facts identifying that Dana Daniel, a younger employee, had provided the confidential information to plaintiff. Robinson commenced the investigation against plaintiff in part for obtaining this confidential information, but initiated no investigation of Ms. Daniel to see if she

provided it. Thus, he treated the older employee differently than the younger employee, raising an inference of age discrimination. This information was not provided to the city manager who made the decision to terminate plaintiff based upon what he was told.

Third, the subordinates led the city manager to believe that plaintiff had requested that the renter's deposit be waived. The city manager was not told that the investigation revealed that plaintiff made no such request. In short, the subordinates misled the city manager into terminating plaintiff. The jury could have found in plaintiff's favor on this cat's paw theory.

Finally, plaintiff endorsed her supervisor, Ms. Miller, as having information regarding why plaintiff was terminated. The trial court struck Miller's declaration upon the mistaken belief that the facts in her declaration exceeded her endorsement. There is nothing in Rule 26 requiring a party to disclose the facts upon which a witness will testify – a party only needs to disclose "the subjects of that information." Thus, her endorsement was proper under Rule 26 because it put defendant on notice that Ms. Miller would testify regarding her understanding of the facts supporting the real reason why plaintiff was terminated. The scope of a disclosure is also a matter of first impression before this Court. Furthermore, when Miller's

facts are added to the summary-judgment analysis, the case against summary judgment is even stronger.

## X. ARGUMENT

The district court ruled on the two issues being appealed, the summary judgment and the striking of witness Miller, in her order at Apdx. 659-75. This Court reviews the summary-judgment ruling *de novo.* Plaintiff addresses the ruling on the motion to strike in the last section.

### *1. A* **Prima Facie** *Step Does Not Belong in a Cat's Paw Analysis*

The trial court believed that a cat's paw theory was subject to the traditional *McDonnell Douglas* three-step analysis. But such an analysis does not apply to a cat's paw theory, a point anticipated by Judge Hartz in *Wells v. Colo. DOT*, 325 F.3d 1205, 1221-28 (10th Cir. 2003)(questioning, in general, the viability of the *McDonnell Douglas* test).[9]

This is a matter of first impression in this Circuit. This Circuit has recognized the application of a cat's paw theory to an age discrimination

---

[9] This is probably not the proper case to examine the continued viability of the *McDonnell Douglas* test in general. Rather, this case focuses on a more narrow question – does the *McDonnell Douglas* test have a place in analyzing a cat's paw claim? For a partial list of the cases questioning *McDonnell Douglas* in general, **see** *Hollis v. Morgan State University*, 153 F.th 369, 388, fn. 2 (4th Cir. 2025), where Judge Quattlebaum, in concurrence, lists numerous cases questioning the viability of the *McDonnell Douglas* test.

case. *Simmons v. Sykes Enterprises, Inc*., 647 F.3d 943 (10th Cir. 2011)(coincidentally, *Simmons* also concerned a termination based on improper disclosure of confidential information). However, *Simmons* did not apply the *McDonnell Douglas* three-step test; it did not apply the *prima facie* test nor the second step of the *McDonnell Douglas* test. Rather, it went straight to the issue of pretext and decided that there was no evidence of but-for causation by the allegedly biased subordinates. *Id.* at 949-50.

Plaintiff has found one circuit which explicitly states that the *McDonnell Douglas* test and the cat's paw test are applied together. **See** *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 379-80 (6th Cir. 2017), and *Gray v. State Farm*, 145 F.4th 630, 637-38 (6th Cir. 2025)(in a retaliation case, it analyzed the cat's paw theory as a vicarious liability theory). From what plaintiff can tell, the question of how the *McDonnell Douglas* three-part test and the cat's-paw theory test relate has never been addressed in this Circuit nor in any other circuit except for the sixth. The cases that apply a cat's paw theory in a discrimination case appear to do so without examining how it relates to a *McDonnell Douglas* theory of proof, which is what occurred in *Simmons*.

The *McDonnell Douglas* three-step analysis has been useful in some cases for determining whether discrimination occurred. The *prima facie* step was designed as a gate-keeping function, to eliminate those cases which have no merit. As the trial court noted, "[o]nly a 'small amount of proof [is] necessary to create an inference of discrimination [to satisfy the *prima facie* step].' *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014)." **See** Apdx 672. **See also** *Zamora v. Elite Logistics, Inc.*, 478 1160, 1171 (10th Cir. 2007)(McConnell concurrence): "Under this formula, a Title VII plaintiff first must establish a prima facie case of discrimination—a burden so light that only the most baseless of claims fails to satisfy it. The heavy lifting of proving and defending a Title VII case occurs in the later stages of the *McDonnell Douglas* analysis."

The four elements of the *prima facie* test are generally as follows, with the fourth element varying with the facts.

1. The plaintiff belongs to a protected class;
2. The plaintiff was qualified for the position or benefit sought;
3. The plaintiff suffered an adverse employment action; and
4. There are circumstances giving rise to an inference of discrimination, such as, a similarly situated person outside the protected class was treated more favorably or the position

remained open and was filled by someone outside the protected class.

This test was originally designed, in 1973 before juries entered the picture, to help judges determine discrimination *vel non*. **See**, *e.g., Jenny v. L3Harris Tech, Inc*., 144 F.4th 1194, 1202 (10th Cir. 2025)(Eid concurrence, referencing Justice Thomas's dissent in *Hittle v. City of Stockton*, 145 S.Ct. 759, 760 (2025)). The *prima facie* stage was designed to eliminate cases that could not support a finding of discrimination. For instance, even if an employee could show evidence of racial discrimination against her, if she was not qualified for the job, the existence of discrimination would be irrelevant. Of course, if the employer decided to hire an equally unqualified person into the position, this argument loses its heft.

The problem arises in applying this test involving a cat's paw theory. To establish a cat's paw theory, a plaintiff must show

- bias by the subordinates,
- their influence in the decision-making process, and
- [the decision-maker's] adoption of [the subordinates'] biased recommendation without an independent investigation.

*Ward v. Jewell*, 772 F.3d 1199, 1205 (10th Cir. 2014). **See also** *EEOC v. BCI Coca-Cola Bottling Co*., 450 F. 3d 476 (10th Cir. 2006), which states

that "[t]o survive summary judgment on a subordinate bias theory, the plaintiff must first establish a genuine issue of material fact concerning the bias of the subordinate. It must then establish genuine issues of material fact as to whether the proffered reason for the employment action is pretextual, which in a subordinate bias claim requires the plaintiff to demonstrate a causal relationship between the subordinate's actions and the employment decision." *Id.* at 488. To say that the subordinates' manipulation of the decision-maker is pretext is logically infirm. It is not pretext, *i.e.*, the decision-maker's excuse to cover the decision-maker's discrimination – it is manipulation to execute the subordinates' discrimination. Note that *BCI Coca-Cola* does not discuss whether the *McDonnell Douglas* test is involved in this proof. It did not apply the *prima facie* test because this stage was uncontested. *Id.* at 484. Rather, it focuses on the traditional summary judgment test of whether there is a material factual issue on the ultimate element of proof – did the subordinates' discrimination cause the employment decision?

Assuming that *McDonnell Douglas* would apply herein, at what point in a cat's paw analysis does a court apply the four elements of the *prima facie* test? Is it applied to determine if the subordinates were biased? If so,

does the test establish merely an inference of subordinate bias or does a plaintiff have to establish sufficient evidence to support a verdict on that issue (as in *BCI Coca-Cola*)? In other words, where does the "heavy lifting" occur, to use *Zamora*'s words? *Zamora*, at 1171. Does a judge do the heavy lifting or does a jury?

The application of the facts herein to the *prima facie* elements above is discussed more fully below. However, at this point in the discussion, plaintiff points out that the *McDonnell Dougla*s three-step process should not apply to a cat's paw analysis. For instance, in the instant case, plaintiff argued that there were three facts supporting subordinate bias:

1. the subordinates didn't tell the city manager that the investigation found that plaintiff did not ask that the renter's deposit be waived (the city manager was told the opposite),
2. they treated plaintiff differently than they treated Ms. Daniel, and
3. they didn't tell the city manager that plaintiff's immediate supervisor was not consulted about the termination.[10]

Assume that these three facts establish an inference of discrimination by the subordinates, are the subordinates now required to offer a legitimate reason for plaintiff's termination at the *McDonnell Douglas* second stage? Because of the nature of a cat's paw proof, the subordinates, themselves,

[10] Point 3 is supported by the city manager's own testimony (fact 95), so it comes in even with the striking of Ms. Miller's declaration.

in fact would offer no legitimate reason for termination at the time of the termination. They did not decide the termination, so only the city manager could fill in this step. As a result, a plaintiff would generally prevail on the second stage of the *McDonnell Douglas* test simply because the subordinates, upon whom the inference of discrimination is based, did not provide a reason for the termination at the time of the termination. Even if one assumes that the city manager's reasons for termination are the same as the subordinates' reasons, it would be impossible for plaintiff to prove pretext on the part of the city manager (not on the part of the subordinates) because he was insulated from the discriminatory facts. **Compare** *Marshall v. The Rawlings Co, LLC*, 854 F.3d 368, 386 (6th Cir. 2017)(Sutton concurrence – the cat's paw theory overrides the honest-belief rule). Or maybe pretext is only a causal issue as *BCI Coca-Cola* said? Or, assuming again that the city manager's reasons for termination are the subordinates' reasons, a plaintiff might have to prove a conspiratorial agreement among the subordinates in order to satisfy the termination reasons. It is a can of worms. It is better to analyze the issue the old-fashioned way.

Plaintiff submits that she established the three elements of the cat's paw theory under traditional summary-judgment analysis – she presented enough facts to support a verdict in her favor on the three cat's paw elements, as she discusses in heading 3 below.

### *2. Plaintiff Established a* **Prima Facie** *Case*

Assuming that this Court does apply the *McDonald Douglas prima facie* test herein, plaintiff established the principles of the *prima facie* stage, at least as the trial court framed the issue.

The trial court stated that the only element in dispute regarding the *prima facie* case "is whether Plaintiff was treated less favorably than younger employees."[11] Apdx 673. The court recognized that there was a dispute as to whether Ms. Daniel was treated differently than was plaintiff. *Id.* But the court disposed of this dispute by finding that "it is undisputed that Plaintiff's supervisors, Mr. Blankenship, Mr. Robinson, and Mr. Trainor

[11] By only focusing on this one fact, the trial court disregarded the fact that the subordinates told the city manager that plaintiff asked to have the renter's deposit waived when, in fact, the investigation revealed the opposite. The trial court may be right that this one fact does not involve a younger employee being treated differently. And that is the point – the bias against plaintiff is easily shown by the subordinates hiding the exculpatory evidence coupled with a pattern of discrimination (in the instant case, most clearly established by Miller, whose testimony was stricken). Hence the error in applying the *prima facie* test herein because it, by design, disregards key facts.

(who made the decision to terminate Plaintiff) were all unaware of Ms. Daniel's purported conduct. (SSOF at ¶¶ 93; 108.)" Fact 93 states that Robinson was not aware of any employee who disclosed confidential information "to third parties."[12] Apdx 416:15. However, Robinson also agreed that "[w]hoever gave [plaintiff] that information [in the text message, *i.e.*, Daniel] would be violating City policy." **See** fact 120, supported at Apdx 429, p. 41:17-20.

Robinson also agreed that there was no investigation done into whether Ms. Daniel had violated any policy regarding the information in the text message. *Id*. p. 42:13-15. That is, he agreed that whoever gave plaintiff the information in the text, that person violated City policy. He knew that plaintiff could not get this information by herself from home. It would be logical to ask Daniel's knowledge of this fact, given the conversation in the text, but Robinson overlooked this point because he was solely focused on finding an excuse to terminate plaintiff. And that is the point – investigating all the facts was not important because Robinson only wanted to terminate plaintiff. A jury could find that his willful blindness existed because he was overly focused on terminating an older employee.

[12] Hence, plaintiff did not dispute this fact because Daniel did not disclose the information to a third-party. **See** *infra,* fn. 8.

**See**, *e.g., Unicolors, Inc. v. H&M Hennes & Mauritz, LP*, 595 U.S. 178, 187-88 (2022)(“We have recognized in civil cases that willful blindness may support a finding of actual knowledge. Circumstantial evidence … may also lead a court to find that [a copyright] applicant was actually aware of, or willfully blind to, legally inaccurate information”).

Plaintiff was terminated for violating 11 different policies. **See** the termination document at Apdx 441-42. But, as the decision-maker said, he terminated plaintiff for two reasons: accessing the renter’s information and asking to waive the renter’s deposit. **See** fn. 2, *supra*. In other words, as far as Trainor was concerned, the other violations were minor. Plaintiff acknowledges that some of those alleged violations would not apply to Ms. Daniel because Ms. Daniel did not allegedly convey any confidential information to a family member. But, Ms. Daniel did convey the confidential fact to plaintiff that the renter was behind in his utility payments to the City. As Mr. Robinson acknowledged, that was a violation of the City’s confidentiality policy. **See** fact 120. The point argued below was that the City did not care whether Daniel violated a policy because Robinson was so eager to “get” plaintiff. Indeed, a few months later, Ms. Daniel was

promoted to the supervisor position that Deborah Miller vacated. **See** fact 99.

In short, plaintiff presented evidence that Robinson treated plaintiff differently than he did Ms. Daniel. This establishes an inference of discrimination, which satisfies the fourth element of the *prima facie* test (**see** order, Apdx 672). Based upon the trial court's misunderstanding of a key fact, the trial court held that plaintiff could not establish a comparator (to satisfy the *prima facie* test) because Ms. Daniel's actions supposedly were not known to the City officials. Apdx 673. Clearly, the district court made a factual mistake because plaintiff presented a factual issue that Robinson knew of Daniel's potential involvement, but ignored or was willfully blind to it. Or, in the summary judgment context, taking this fact in the light most favorable to plaintiff,[13] plaintiff created an inference of discrimination.

---

[13] This is yet another argument against applying the *prima facie* test to a cat's paw case. This is a classic factual dispute – did Robinson ignore Daniel's involvement in disclosing confidential information? In a straight cat's paw case, this is a jury question. But, applying the *prima facie* test is a judge function. Again, a fault of the *McDonnell Douglas* test is often the inference of discrimination and pretext are decided by the same set of facts. Hence, a jury question is reassigned to a judge.

### *3. Plaintiff Supported Her Cat's Paw Theory*

Plaintiff stated that she was relying upon a cat's paw theory to prove her claim of age discrimination. **See** Apdx 422-23. This Circuit has recognized the viability of using a cat's paw theory to prove age discrimination. *BCI Coca-Cola*, 450 F.3d at 484.

The trial court recognized that plaintiff relied upon a cat's paw theory to prove her claim, but it erroneously stated that "Plaintiff's argument is unsupported by the record. (See generally SSOF ¶¶ 38-47; 81-91.)" **See** order, Apdx 674, fn. 4. As stated above, the facts that support her theory are facts 101-122, ***not*** facts 38-41 and 81-91 upon which the court said it relied.

The three elements of the cat's paw theory are set forth above at 26. It is clear that the subordinates influenced the city manager: (1) they did not tell him that the investigation determined that plaintiff never asked that the renter's deposit be waived; (2) they never told the city manager that Daniel may have given plaintiff the alleged confidential information, yet was not investigated; and (3) they didn't tell Trainor that plaintiff's supervisor was not consulted about the termination.[14]

[14] At the very least, these assertions present a factual question.

Plaintiff established all three elements of the cat's paw theory with the following facts:

1. Plaintiff was terminated for using confidential information for her personal benefit and for trying to get her husband's renter's deposit waived. Apdx 54, fact 103.

2. Plaintiff admits that she asked whether the renter had been a prior City customer. She also admits that she looked up the renter in the system to see if he was a prior customer. But this information was not confidential information. Fact 107

3. Because she was at home on FMLA leave on the day of the incident, she called Dana Daniel to ask if the renter needed to pay a deposit. Daniel told her not only that the renter needed to pay a deposit, but that he had also missed a payment. That is, Daniel disclosed confidential information, which Robinson said violated City policy.[15] Fact 120.

4. Mr. Robinson began the investigation against plaintiff on November 3 when he wrote that plaintiff was trying to get the renter's deposit waived. Fact 111.

5. The investigation showed that plaintiff never asked that the renter's deposit be waived. Fact 105 The trial court did not even discuss this fact.

6. City Manager Trainor was walked through the investigation and was never told that plaintiff did not ask that the renter's deposit be waived. Nor was he told that Daniel was not investigated for her involvement in the potential violation of the same confidentiality policy that plaintiff allegedly violated. Fact 108 Nor was he told that plaintiff's immediate supervisor was not consulted on the termination. Fact 95.

7. Plaintiff was 72 years old and Daniel was 36 years old. Facts 122 and 123.

---

[15] Robinson denies that he knew that Daniels provided the confidential information to plaintiff, but that is both a factual question on whether he was telling the truth or whether he was willfully blind to the issue.

First, as discussed above, the circumstantial evidence establishes at least an inference of bias – in the meeting with the city manager, the subordinates walked him through the reasons for terminating plaintiff without telling him the full story. The subordinates told the city manager that plaintiff asked that the renter's deposit be waived. Fact 103. But the investigator found that ***no*** employee recalled that plaintiff requested "said customer's deposit to be waived." Fact 105. Trainor was not told that Daniel may have given plaintiff the confidential information, but that Ms. Daniel was not investigated for this. Fact 108. In addition, plaintiff was on FMLA leave at the time of the incident, which supports an inference that the subordinates thought she was too old to work, was wearing out, and it was time for her to go.

Nor did the subordinates tell the decision-maker that plaintiff's immediate supervisor, Ms. Miller, was not even consulted (as policy required), regarding the recommended termination. Fact 95. The city manager said that under normal circumstances, she should have been involved.[16] *Id.*

[16] Assuming that this Court reverses the striking of Miller's testimony, Miller adds evidence that Robinson said he did not want someone older to be the administrative assistant, that Miller would have opposed plaintiff's

The above also establishes the subordinates' influence in the decision-making process – the city manager based his decision on the two false facts he was fed (she accessed confidential information and she asked that the renter's deposit be waived).

Finally, the decision-maker did not make his own independent investigation – rather, he relied upon the facts being fed to him by the subordinates in the one meeting regarding plaintiff's termination.[17] Facts 100-04.

Because it is clear that plaintiff has presented a factual issue that she was treated differently than Ms. Daniel and that she submitted facts to support her cat's paw theory, plaintiff requests that this Court reverse the trial court on its finding of summary judgment[18] against plaintiff and remand for a trial.

---

termination had she been consulted, and that Miller quit a few months after plaintiff's termination because she could see that the younger employees were manipulating the supervisors against the older employees.

[17] Understandably, the city manager is a busy person and relies upon his subordinates. In this case, his subordinates took advantage of the city manager's good faith reliance. **See** *Shager v. Upjohn Co*., 913 F.2d 398, 405 (7th Cir. 1990).

[18] The trial court also stated that "Plaintiff has provided no other evidence demonstrating animus toward a certain age group." Order, Apdx 674.

### *4. The Court Erred in Striking Witness Miller*

The trial court struck the testimony of witness Miller in its order at Apdx 663-69. This Court reviews the striking of a witness for abuse of discretion. *Cummings v. General Motors Corp*., 365 F.3d 944, 952 (10th Cir. 2004).

Deborah Miller was plaintiff's first-line supervisor, one level below Mr. Robinson. Plaintiff endorsed her as plaintiff's "supervisor under Mr. Robinson. She has information regarding how plaintiff performed her job and why she was terminated." Apdx 573, ¶ 4. The trial court struck her declaration testimony because this disclosure was deemed deficient: "Plaintiff's initial disclosures were therefore deficient because they did not identify all subjects,[19] and instead offered only a perfunctory statement."

---

However, because the statutory violation herein occurred against an individual, not against a group, the court's observation is irrelevant. *Bostock v. Clayton County*, 590 U.S. 644, 658 (2020). That is, a plaintiff does not have to prove that an employer discriminates against everyone in a certain group. She only needs to show that her age made a difference in her own case.

[19] In its order, the court never defined "subject." Rather, it apparently assumed that a fact equaled a subject. That is not correct. A subject is a category while a fact is a discrete element that fits into a category.

Apdx 664. The disclosure of the subjects upon which Miller would testify was not perfunctory.

The trial court's only analysis of whether Miller's disclosure satisfied Rule 26 were the few lines in Apdx 664 quoted above.[20] This misses the purpose of a disclosure – a disclosure does not set forth the facts a witness knows – it discloses the subjects of these facts. It also alerts the other side that this person may be a witness (a change made in 2000 discussed below) and, at the very least, the witness has such and such discoverable information.

To accept the trial court's reasoning herein would mean that a clever (and daring) attorney could conduct no discovery and at trial object to a witness's testimony beyond that which was disclosed.[21] That is not the purpose of a disclosure. In short, the trial court put the cart before the horse by spending most of its time in determining whether the testimony

[20] The court also noted that plaintiff did not provide Miller's phone number. Apdx 664. At the time of the disclosures, counsel had misplaced Ms. Miller's telephone number. Apdx 636. However, a telephone number is not required in a disclosure. Rule 26(a)(1)(A)(i) only requires that the telephone number be disclosed if known. Besides, Ms. Miller was a City employee and, therefore, the City already knew her number.

[21] This is exactly what was corrected in *Liberty Ins. Corp. v. Brodeur*, 40 F.4th 1185, 1189 (9th Cir. 2022), discussed *infra* at 45.

should be stricken under Rule 37, while giving almost no attention to whether the disclosure satisfied Rule 26 in the first instance. **See** order, Apdx 664.

There appears to be little case law defining “the subjects of that information” in Rule 26(a)(1)(A)(i), which rule reads as follows:

> a party must, without awaiting a discovery request, provide to the other parties:
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Nowhere does the rule require disclosure of facts. Instead, it only requires disclosure of “the subjects of that information.” The trial court erred in striking Miller’s testimony because the disclosure did not contain all the facts in her declaration.

Prior to 2000, the purpose of initial disclosures was to disclose anyone with knowledge of discoverable information, be they pro or con. *El Camino Resources, Ltd v. Huntington Nat’l Bank*, 2009 WL 1228680, *3 (W.D. Mich. 2009). In 2000, that was changed to only require disclosure of

individuals who may be used to support a party's claim or defense.[22] *Id.* "The distinct purpose of the initial disclosure is to alert the opponent to the existence of a witness whose testimony may be helpful to the disclosing party." *Id.*

Plaintiff disclosed 10 individuals. She disclosed that three individuals – Robinson, Miller, and Brisenhan (who was with HR) – knew why plaintiff was terminated. Apdx 573. Under the 2000 change to Rule 26, defendant also knew that plaintiff planned to use these witnesses at trial. *El Camino Resources,* at *3. Certainly this was enough description of the subject of their information to put the City on notice that it might want to discover what Miller knew about why plaintiff was terminated.

Indeed, this disclosure was more precise than defendant's own disclosures on the same subject, where the City stated that 15 individuals all had the same discoverable information regarding "the circumstances giving rise to Plaintiff's termination." Apdx 640-41, ¶ 2. Plaintiff does not make this comparison to argue that two wrongs make a right; indeed, plaintiff asserts that the City's disclosures were proper under the rule. Plaintiff maintains that the City's disclosures show the practice in the

---

[22] Hence, defendant herein did not disclose Ms. Miller because the City understandably did not want to use her as a witness.

District of Colorado that parties disclose the subject of an individual's discoverable information, not the facts that support the subject.[23]

Furthermore, Miller's disclosure that she "has information regarding how plaintiff performed her job and why she was terminated" covered the facts in her declaration. Her declaration (Apdx 440) read as follows:

> 1. I was Carmen Tafoya's first level supervisor. I worked 32 years in the department. Ms. Tafoya did good work, although she was not as fast as she used to be.
>
> 2. My supervisor, Brett Robinson, said that "I don't want someone older to be an administrative assistant for the office," when an older person (not Ms. Tafoya) applied for this open position.
>
> 3. As Ms. Tafoya's first level supervisor, I should have been involved in the decision to terminate her. I was not. I understand that she was terminated because she looked up to see whether her husband's renter had been a prior city utility customer. That would not have caused a termination and, had I been told of her termination, I would have opposed it. Instead, I was not told of her termination until minutes before Ms. Tafoya was terminated and I could do nothing about it.
>
> 4. I resigned a few months after her termination because I could see that the younger employees were manipulating the supervisors against some of us older employees. I was going to complain of this

[23] This is the inverse of disregarding conclusory statements in a complaint. If a complaint alleges, for instance, conclusory facts, this will not withstand a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint has to provide facts supporting the conclusion. A disclosure, on the other hand, provides the witness's conclusion, so to speak, and discovery can ferret out the facts supporting that conclusion.

> to HR, but, before I could do so, I was put on administrative leave for "behavioral issues." After I left, Dana Daniel, who was 36 years old, took over my position.

Paragraph 1 referred to how plaintiff did her job, the first subject in Miller's disclosure. Paragraph 2 was evidence to support why the City terminated plaintiff, because of her age. That is, Miller's endorsement said that Miller knew why plaintiff was terminated and Robinson's statement was a fact to support that testimony. Paragraph 3 was circumstantial evidence that plaintiff was not terminated pursuant to normal procedures and, hence, Ms. Miller knew that the City was terminating plaintiff for a suspicious reason.[24] Finally, ¶ 4 is, again, circumstantial evidence that plaintiff, an older employee, was treated the same way that Ms. Miller, also an older employee, was treated. That is, this fact supported Miller's endorsement that she knew why plaintiff was terminated. In short, the facts in the four paragraphs of her declaration were all covered by the subjects in her disclosure.

This Court has not spoken on what degree of specificity the "subjects of that information" must be disclosed. The following disclosure was held to comply with the rule: "Ms. Prevete is the Chief Financial Officer of Alliant

[24] The fact that she was not consulted, a violation of normal procedures, was also established through the city manager. Fact 95.

Capital, LLC and may have knowledge regarding matters including, but not limited to, the various loan defaults that occurred in connection with the properties referenced in the Complaint." *Tara Woods Ltd. Ptrship v. Fannie Mae*, 265 F.R.D. 561, 568 (D. Colo. 2010). Plaintiff's disclosure of Ms. Miller is more precise than the *Tara Wood's* disclosure.

As another Colorado district court has explained,

> [w]hile a party is not necessarily required to provide a minute recitation of the putative witness' knowledge, the Rule 26(a)(1)(A) disclosure should indicate "briefly the general topics on which such persons have knowledge." *See* Advisory Committee Notes to 1993 Amendments to Rule 26(a)(1)(A). The Advisory Committee's reference to "topics" suggests that the disclosing party must provide more than a perfunctory statement that the identified person has information "about the case."

*Lobato v. Ford*, 2007 WL 2593485, *5 (D. Colo. 2007). Clearly, plaintiff herein provided more disclosure than Ms. Miller merely had "information about the case."

Most of the *Lobato* order concerned a late disclosure of a witness who was a former girlfriend of the officer who shot plaintiffs' decedent. Even though discovery had ended, the court cured the disclosure by allowing a deposition of the woman. The court stated that "the mandatory disclosure requirements under Rule 26(a)(1) are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed,

and facilitate preparation for trial or settlement.'" *Id.* at *6. However, it did not add much to defining "the subjects of that information" in Rule 26.

The instant case is similar to *Liberty Ins. Corp. v. Brodeur*, 40 F.4th 1185 (9th Cir. 2022). *Brodeur* concerned whether the use of an all-terrain vehicle was covered by an insurance policy. The defendant disclosed himself as "available to testify '[r]egarding the claims of the underlying case and the damages at issue'…" *Id.* at 1190.[25] The trial court limited the defendant's testimony to the four corners of this disclosure,[26] similar to the limitation of an expert by that expert's report in Rule 26(a)(2)(B).

The Ninth Circuit held that Rule 37 did not allow "the district court broad power to pick and choose portions of witness testimony to exclude *as a sanction* because it concludes those portions of testimony were not encompassed 'within the scope of the Rule 26(a) disclosures.'" *Id.* at 1190. Indeed, the circuit held that the trial court's error was holding that the disclosure was inadequate in the first instance. *Id.* at 1190. Because the disclosure complied with the Rule 26, Rule 37 was incapable of limiting it.

---

[25] This was an even broader disclosure than that of Ms. Miller herein.

[26] This is the same as the example above, page 39, where a clever litigator forgoes discovery and objects to any testimony not in the disclosure.

The same applies herein. The disclosure, itself, complies with Rule 26 and, therefore, any reference to Rule 37 is irrelevant. Plaintiff may use Ms. Miller as a witness on the topic of why plaintiff was terminated. Certainly, she is allowed to refer to those facts which support this testimony.

Plaintiff requests that this Court reverse the order below striking Ms. Miller's testimony and that Ms. Miller be allowed to testify regarding the facts that supported her understanding of why plaintiff was terminated and that these facts be considered in the summary-judgment ruling.

## XI. CONCLUSION

Appellant Tafoya respectfully requests that this Court reverse the two decisions of the district court and remand for a trial.

Oral argument is requested because (1) whether *McDonnell Douglas* applies to a cat's paw case and (2) what are the requirements of disclosure under Rule 26(a)(1)(A)(i) are both matters of first impression with this Court.

## XII. CERTIFICATE OF COMPLIANCE WITH RULES 25.3 and 32(a)(7)(B)(i)

Counsel hereby certifies that all required privacy redactions have been made. This brief complies with the type-volume limitation of

Fed.R.App.P. 32(a)(7)(B) because this brief contains 10,300 words, inclusive of everything including footnotes.

A copy of the order being appealed and the judgment are attached.

Respectfully submitted this December 1, 2025.

By: s/ *Robert M. Liechty*

Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
Fax: (303) 861-2746
Email: rliechty@crossliechty.com
ATTORNEY FOR PLAINTIFF-APPELLANT

**CERTIFICATE OF SERVICE**

I hereby certify that on this December 1, 2025, a true and correct copy of the above and foregoing **OPENING BRIEF** was filed electronically with the Court who provides notice to the following:

Marni Nathan Kloster
Daniel Jacobs
Nathan Dumm & Mayer PC
7900 E. Uniion Ave., Suiote 600
Denver, CO 80237-2776
ATTORNEYS FOR DEFENDANT-APPELLEE

s/ *Robert Liechty*
Robert Liechty

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 24–cv–00884–MDB

CARMEN TAFOYA,

Plaintiff,

v.

CITY OF FOUNTAIN,

Defendant.

---

**ORDER**

---

This matter is before the Court on two motions. First, Defendant's Motion for Summary Judgment. (["MSJ"], Doc. No. 21.) Plaintiff filed a response, to which Defendant replied. (["MSJ Response"], Doc. No. 24; ["MSJ Reply"], Doc. No. 30.) Second, Defendant's Motion to Strike ECF 24-4 & ECF 24-10. (["Motion to Strike"], Doc. No. 29.) Plaintiff filed a response, to which Defendant replied. (["Motion to Strike Response"], Doc. No. 32; ["Motion to Strike Reply"], Doc. No. 33.) After reviewing the motions, briefing, and relevant law, the Court **ORDERS** that the Motion to Strike be **GRANTED in part and DENIED in part**, and that Defendant's MSJ be **GRANTED**.

**BACKGROUND**

Plaintiff initiated this action on April 2, 2024, alleging she was terminated from the City of Fountain Utilities Department because of "her age and physical condition," in violation of the Age Discrimination in Employment Act ("ADEA"), 29 USC § 623. (Doc. No. 1 at ¶ 10.)[1]

The following facts are undisputed unless otherwise noted.

Prior to her termination, Plaintiff worked for the City Utilities Department for approximately 51 years. (["Separate Statement of Facts" or "SSOF"], Doc. No. 30-1 at ¶ 123.) In late 2022, Plaintiff was the subject of an investigation related to her alleged use of City resources to obtain information about a prospective tenant for her family's rental property. (*Id*. at ¶¶ 37; 39; 48.) The investigation was conducted by Assistant City Attorney Kaitlin Parker. (*Id*. at ¶ 40.) Over the course of the investigation, Ms. Parker interviewed Plaintiff and several other City employees. (*Id*. at ¶¶ 41; 46.) Plaintiff admits that, while working from home on November 3, 2022, she asked her co-worker Dana Daniel to look up the prospective renter. (*Id*. at ¶ 50.) Plaintiff also admits that, when she was back in the office on November 4, 2022, she used the City's computer and system to look up the prospective renter.[2] (*Id*. at ¶ 52.) Plaintiff then shared the information she obtained with her husband and son. (*Id*. at ¶ 49.) Plaintiff did not have written authorization from the prospective tenant to look up his information, nor to share it with her family. (*Id*. at ¶ 53.) Moreover, Plaintiff admits she was aware of the City's policies regarding using City equipment for personal reasons, confidentiality, and conflict of interest, and that violating such policies could result in discipline or termination. (*Id*. at ¶¶ 6-36.)

---

[1] Though Plaintiff alleges her "physical condition"—i.e., her vertigo—played a role in her termination, Plaintiff has since confirmed that she is bringing only an age discrimination claim and not any type of disability claim. (*See* Doc. No. 24 at 9.)

[2] Plaintiff makes a limited admission here, stating she looked up the prospective renter only to see if he had been a prior customer. (SSOF at ¶¶ 51-52.)

On February 17, 2023, following the investigation, Plaintiff was terminated—she was 72 years old at the time. (*Id*. at ¶¶ 72; 123.)

**LEGAL STANDARDS**

**I. Motion to Strike**

The decision of whether to grant or deny a motion to strike lies "within the sound discretion of the district court." *Fed. Deposit Ins. Corp. v. Isham*, 782 F.Supp. 524, 530 (D. Colo. 1992). However, motions to strike are generally disfavored, particularly in the context of motions for summary judgment. *See Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 2593485, at *5 (D. Colo. Sept. 5, 2007), *aff'd*, No. 05-cv-01437-LTB-CBS, 2007 WL 9666115 (D. Colo. Oct. 31, 2007); *Alexander v. Archuleta Cnty.*, No. 08-cv-00912, 2009 WL 3245915, at *4 (D. Colo. Oct. 2, 2009) ("[S]triking affidavits is disfavored in the context of a summary judgment motion."); *see also Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009) ("[L]itigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits.").

**II. Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The

non-moving party may not rest solely on the allegations in the pleadings but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When evaluating a motion for summary judgment, a court may only consider admissible evidence. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not

require the Court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The non-movant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### I. Motion to Strike

Defendant moves to strike two exhibits in Plaintiff's MSJ Response: the declaration of Deborah Miller, (Doc. No. 24-4), and Plaintiff's own declaration, (Doc. No. 24-10). (*See generally* Doc. No. 29.) The Court considers each request, in turn.

#### A. Declaration of Deborah Miller (Doc. No. 24-4)

Ms. Miller's declaration is relatively short but purports to offer substantive testimony. For example, she says her supervisor, Brett Robinson, made the following statement in reference to someone other than Plaintiff: "I don't want someone older to be an administrative assistant for the office." (Doc. No. 24-4 at ¶ 2.) She also says she was Plaintiff's first-level supervisor and that customer look-up should not have caused termination. (*Id.* at ¶ 3.) She further says she resigned because she could see "younger employees were manipulating the supervisors against some of us older employees." (*Id.* at ¶ 4.) In other words, the statements in Ms. Miller's declaration are relevant to Plaintiff's claim of age discrimination.

Rule 26(a)(1) requires a party to provide the other party with "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that may be used by the party to support its claims or defenses." Fed. R. Civ. P. 26(a)(1). Such disclosures must be supplemented in a timely

manner throughout the discovery period. *See* Fed. R. Civ. P. 26(e). Rule 37 sets forth sanctions for failing to comply with Rule 26, providing "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The nonmoving party has the burden of showing the failure to timely disclose was substantially justified, or harmless. *See Aldrich v. Indus. Cooling Sols.*, No. 14-cv-03206-CMA-KMT, 2016 WL 879675, at *1 (D. Colo. Mar. 7, 2016).

Here, Plaintiff listed Ms. Miller in her initial disclosures but did not provide her contact information. Moreover, Plaintiff only vaguely noted that Ms. Miller "has information regarding how plaintiff performed her job and why she was terminated." (Doc. No. 29-2 at 1.) By contrast, Ms. Miller's declaration offers specific statements attributable to Defendant, information related to Defendant's policies and practices regarding customer look-up, information about two groups of employees ("younger employees" and "supervisors"), and information about her own experience related to her age. (*See generally* Doc. No. 24-4.) Plaintiff's initial disclosures were therefore deficient because they did not identify all subjects, and instead offered only a perfunctory statement. *See* Fed. R. Civ. P. 26(a)(1)(A)(i); *Lobato*, 2007 WL 2593485, at *5 ("[T]he disclosing party must provide more than a perfunctory statement that the identified person has information 'about the case.'"). Additionally, Ms. Miller was not referenced in any of Plaintiff's four supplemental disclosures. (*See* Doc. No. 29-2 at 4-11.) And when Defendant expressly asked Plaintiff to identify any statements made by "current or former officers,

employees, or representatives of the City" that support Plaintiff's claims, Plaintiff did not identify Ms. Miller or her statements. (*See* Doc. No. 29-4 at ¶ 12.)

Plaintiff argues that (i) her attorney misplaced Ms. Miller's contact information; (ii) Defendant should have had Ms. Miller's contact information because she was a former City employee; (iii) Plaintiff was unaware of Ms. Miller's statements at the time she completed the interrogatory and the statements were "developed through attorney work product"; (iv) Defendant failed to disclose Ms. Miller in its own disclosures; and (v) the City was on notice of the assertions in Ms. Miller's declaration. (*See generally* Doc. No. 33 at 6-10.) The Court will address each argument in turn to determine whether the late disclosure was substantially justified, and if it was not, then whether it was harmless.

***Ms. Miller's contact information was misplaced***

Even assuming Plaintiff's attorney misplaced Ms. Miller's contact information, he could have obtained the information from Plaintiff, or he could have obtained it from Defendant, who—as Plaintiff notes—should have the contact information. Alternatively, counsel could have simply conferred with Defendant, letting them know he needed additional time to track down Ms. Miller's information and supplement the disclosures. In other words, misplacing Ms. Miller's contact information is not substantial justification for the late disclosure.

***Defendant was in possession of Ms. Miller's contact information***

A party is not relieved of their Rule 26(a)(1) obligations simply because the opposing party can obtain the information from another source. *See Spacecon Special Contractors, LLC v. Bensinger*, No. 09-cv-02080–REB–KLM, 2011 WL 721263, at *3 (D. Colo. Feb. 23, 2011). And in any event, the missing contact information is of course not the most significant aspect of this

late disclosure—it is the substantive testimony Ms. Miller offers. Thus, even assuming that Defendant had Ms. Miller's contact information, Plaintiff was not substantially justified in her discovery failures.

***Plaintiff was unaware of the statements, because they were only later developed through "attorney work product"***

This argument is problematic for two reasons. First, Plaintiff's discovery obligations extend beyond information in her own possession, and apply to all information in the possession of her attorney. (*See* Doc. No. 29-3 at 1 (interrogatory states "you are requested to furnish all information available to you, including information in the possession of attorneys").) Second, by this argument, anyone could avoid the disclosure requirements of Rule 26(a). They could offer a high-level perfunctory statement that the witness has relevant information about the claims, do nothing to uncover the specific information the witness might offer, and wait until a dispositive motion is filed to offer specific statements, carefully crafted to avoid summary judgment. The Rules require diligence up front, precisely to avoid this type of "gotcha" litigation.

***Defendant failed to disclose Ms. Miller***

Defendant was not obligated to disclose Ms. Miller. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (a party need only disclose witnesses it may use to support its claim or defenses). And even if Defendant was required to disclose Ms. Miller, that requirement would not excuse Plaintiff's own disclosure shortfalls.

In sum, Plaintiff has not met her burden of showing she was substantially justified in failing to comply with Rule 26(a)(1). As best the Court can tell, Plaintiff did not like her chances on summary judgment and swung for the fences with this declaration. Still—and despite the unjustified delay—the late disclosure of this information might be harmless. *See* Fed. R. Civ. P.

37(c)(1). In determining whether its harmless, the Court considers the following factors: (1) the prejudice and surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

***Prejudice and surprise to Defendant***

Defendant argues that Plaintiff's failure to disclose the information in Ms. Miller's declaration was prejudicial because it prevented Defendant from deposing Ms. Miller. (Doc. No. 29 at 11.) Defendant also argues the assertions contained in Ms. Miller's declaration were "a complete surprise" because they were not consistent with prior discovery. (*Id*. at 10.) The Court agrees. Even though Ms. Miller is a former employee of Defendant, the prejudice appears meaningful. Not only is Ms. Miller offering substantive testimony about her experience, she also implicates at least one other witness—Mr. Robinson—and perhaps others as well. (*See* Doc. No. 24-4 at ¶ 4 (referring to a group of "younger employees" who were purportedly manipulating the supervisors against older employees).) Moreover, the nature and timing of the declaration suggests it was curated in direct response to Defendant's MSJ Motion. Accepting it now would be like allowing someone to build their defensive playbook with their opponent's offensive playbook already in hand. This factor weighs against Plaintiff.

***Ability to cure prejudice to Defendant & the likelihood of disrupting trial***

This case is not yet set for trial but is in its later stages. The MSJ Motion is fully briefed and discovery closed in November 2024. (*See* Doc. No. 13). Moreover, and as noted above, Ms. Miller's declaration is chock-full of substantive testimony that would require meaningful follow-

up—not just with Ms. Miller, but with others as well. Thus, even if some of the prejudice could be lessened through Ms. Miller's deposition, it would fall short of curing. And a full reopening of discovery would delay the matter significantly (including through a new round of summary judgment briefing). And finally, some of the prejudice (such as the advantage on summary judgment) cannot be cured at all. These two factors weigh against Plaintiff.

***Bad faith/willfulness***

Finally, Defendant argues that Plaintiff's "reliance on Ms. Miller's testimony in direct contradiction to Plaintiff's own prior testimony disclaiming Ms. Miller's knowledge of the same is indicative of bad faith or willfulness." (Doc. No. 29 at 11.) Specifically, Plaintiff confirmed Ms. Miller "didn't have knowledge of the particulars" of Plaintiff's termination, even stating "[s]he didn't have a clue of what happened." (Doc. No. 29-1 at 147:15-18.) She further testified that Ms. Miller never indicated to Plaintiff that she was terminated because of her age. (*Id.* at 246:18-24.) This testimony may not be enough to show that Plaintiff willfully withheld the Miller information until the eleventh hour, but at a minimum it raises suspicion over the veracity of the declaration and could indeed be indicative of bad faith. Still, even assuming this factor weighs in Plaintiff's favor, all other factors do not, leading this Court to the conclusion that the late disclosure is not harmless.

Where a late disclosure is neither substantially justified nor harmless, a court has meaningful discretion in imposing appropriate sanctions, and here—taking into account the various factors and issues described above—the Court finds it most appropriate to strike Ms. Miller's declaration. *See generally Woodworker's*, 170 F.3d at 993 (recognizing that Rule 37(c) vests broad discretion with the trial court); *Watts v. Anthem, Inc.*, No. 18-cv-01732-NYW, 2020

WL 13933266, at *5 (D. Colo. Feb. 21, 2020) (striking affidavit of witness for failure to comply with Rule 26).

The Court pauses to note its strong reluctance to strike this purported evidence at the summary judgment stage. Motions to strike are disfavored, and this Court—like all courts—prefers to resolve disputes on their merits. That said, the Rules must be given effect. A party may not disclose a witness in only the most general terms, disclaim under oath that the witness has relevant information, and then, after the opposing party has fully set out its summary judgment arguments, unveil a new set of facts. Allowing such tactics would permit trial by ambush and undermine the fairness that the disclosure rules are designed to protect.

**B. Plaintiff's Declaration (Doc. No. 24-10)**

Defendant argues that Plaintiff's declaration contradicts her deposition testimony and is a sham declaration. (*See* Doc. No. 29 at 2-5.)

Plaintiff's declaration states as follows:

1. I was 72 years old when the City terminated me. Before my termination, I had worked 51 years in the utility department with the City. I had had no prior discipline.

2. I wanted to find out if my husband's tenant had been a prior utility customer of the City. If so, he would not have to pay a deposit if he had good credit with the City. I did not know that, on the day before, November 2, [2022], the renter had already been told that he had to pay the deposit.

3. On November 3, I was at home on intermittent FMLA leave due to an episode of vertigo. I was not able to look up customer information from home. Around noon, I called Susan French and Mary Hawkins, both of whom were too busy to talk. I then called Dana Daniel and left a voicemail.

4. According to the signature on the text message, at 12:39 I sent a text message to Ms. Daniel asking her to call me. She then called me and I gave Ms. Daniel the renter's address for her to check to see if he had been a customer. Ms. Daniel said she would have to talk to someone in the office. She called me back and told me that the renter needed to pay a $250 deposit and $220.86 on an unpaid bill. I mistakenly texted this

information back to Ms. Daniel. I meant to send the information to my son who managed the property.

5. Because my vertigo would sometimes be initiated by driving, my doctor told me it would be best for me not to drive the 20 minutes each way to work every day.

(Doc. No. 24-10 at ¶¶ 1-5.) Plaintiff asserts that her declaration does not contradict her deposition testimony. (*See* Doc. No. 32 at 1-5.)

Defendant is correct that there are at least some discrepancies between Plaintiff's deposition testimony and her declaration. For example, the declaration concerns events that occurred on November 3, while the purportedly contradictory testimony Defendant points to, references November 4. (*See generally* Doc. No. 29-1.) And while Plaintiff's deposition testimony reflects that her vertigo did not require her to work from home, or prevent her from leaving the house, (*see id*. at 178:11-4; 181:91-5), her declaration says something slightly different: her vertigo is sometimes initiated by driving, and her doctor told her to avoid driving to work every day, (*see* Doc. No. 24-10 at ¶ 5). Additionally, in her declaration, Plaintiff states she "wanted to find out if [her] husband's tenant had been a prior utility customer of the City" because, "[i]f so, he would not have to pay a deposit if he had good credit with the City." (*Id*. at ¶ 2.) However, during Plaintiff's deposition there appeared to be some confusion about a deposit—and specifically, whether Plaintiff inquired about waiver of the deposit. (*See, e.g.,* Doc. No. 29-1 at 117:6-9; 121:16-18; 123:4-8; 129:6-9). Thus, for the purpose of this analysis, the Court considers Plaintiff's declaration "contradictory" in some minor respects.

Still, an affidavit should not be disregarded solely because it conflicts with the affiant's prior sworn statements; rather, courts should "disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Law Co., Inc. v. Mohawk Constr. &*

*Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). To determine if an affidavit creates a sham fact issue, courts consider whether: "(1) the affiant was cross-examined during [her] earlier testimony; (2) the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001).

Here, Defendant argues that (i) Plaintiff was cross-examined during her deposition, (ii) the declaration was not based on newly discovered evidence; and (iii) Plaintiff does not purport to explain any confusion through her declaration. (*See generally* Doc. No. 29 at 2-5.)[3] The Court agrees with Defendant on the first two factors but disagrees as to the third. It is plain to see that there was at least some confusion during Plaintiff's deposition about the impact of her vertigo and about the deposit and waiver issue. In other words, Plaintiff's declaration appears to be—at least in part—an attempt to clarify some confusion, and the Court will allow it.

## II. Defendant's MSJ

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may prove violation of the ADEA either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3] Plaintiff does not address the factors and only argues that Defendant has not shown any inconsistencies between the declaration and Plaintiff's deposition testimony. (*See* Doc. No. 32 at 1-5.)

Here, Plaintiff has offered no direct evidence of discrimination, so her claim proceeds under the *McDonnell Douglas* framework. Under this framework, a plaintiff has the initial burden of making a *prima facie* case. *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019) (citing *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969-70 (10th Cir. 2017)). If she does, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012)). Once such a showing has been made, the burden shifts back to plaintiff to prove the employer's proffered reason is pretext. *Id.*

***Prima Facie Case***

To prove a *prima facie* case of age discrimination, a plaintiff must show: "1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)). The critical inquiry is whether the plaintiff has "demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000). Only a "small amount of proof [is] necessary to create an inference of discrimination." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014).

Here, the first two elements are not in dispute because Plaintiff is over 40 years old, (SSOF at ¶ 123), and her employment was terminated. *See Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998) (noting that termination is an adverse employment action).

Defendant does not appear to dispute the third element, either. Thus, the only element in dispute is whether Plaintiff was treated less favorably than younger employees.

Defendant argues that Plaintiff has not identified any other City employee who engaged in similar conduct and was treated differently (i.e., anyone who committed a similar violation and not terminated). (Doc. No. 21 at 9.) Plaintiff argues that Dana Daniel, a 36-year-old employee, also violated the City's confidentiality policy when she told Plaintiff how much money the prospective tenant owed the City, but she was not investigated or terminated. (Doc. No. 24 at 3-4.) In response, Defendant contends (i) the City did not have knowledge of Ms. Daniel's purported misconduct; and (ii) Plaintiff has not shown Ms. Daniel is "similarly situated." (Doc. No. 30 at 3-5.)

Viewing the factual record and all inferences drawn therefrom in the light most favorable to Plaintiff, the Court finds the record taken as a whole could not lead a rational trier of fact to find for Plaintiff.

First, it is undisputed that Plaintiff's supervisors, Mr. Blankenship, Mr. Robinson, and Mr. Trainor (who made the decision to terminate Plaintiff) were all unaware of Ms. Daniel's purported conduct. (SSOF at ¶¶ 93; 108.) *See, e.g., Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 720 (10th Cir. 2014) (affirming summary judgment where employer lacked "specific knowledge" of other employee's comparable misconduct at time of termination). In other words, on this record, it is impossible for Ms. Daniel to be a "similarly situated" comparator because it is undisputed that Ms. Daniel's conduct—assuming it occurred—was not known and could not have been subjected to the same work standards or employer treatment (since the employer was not aware of it). *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005),

*abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018) ("Individuals are considered 'similarly-situated' when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

Second, while comparator evidence is not the only evidence that can create an inference of discrimination, *see Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005), Plaintiff has provided no other evidence demonstrating animus towards a certain age group. Indeed, it is undisputed that the City has a history of employing individuals the same age or older than Plaintiff. (SSOF at ¶¶ 59-60.) It is also undisputed that 90% of employees in the City's billing department are over the age of 40, and that 1/3 of those are over 60. (*Id.* at ¶ 86.) Moreover, Plaintiff offers no evidence that she was replaced by a younger employee, and it is undisputed that she was never pressured into retiring. (*Id.* at ¶¶ 62-67.) Because Plaintiff fails to establish a *prima facie* case of age discrimination, her claim fails as a matter of law.[4]

[4] Though the Court need not address the remaining steps of *McDonnell Douglas*, it briefly notes Plaintiff does not appear to dispute that Defendant met its burden of putting forth evidence of a legitimate, non-discriminatory motive for the termination—i.e., Plaintiff's violation of the City's confidentiality and personal use policies. And as to the third step, Plaintiff relies on a "cat's paw" theory, (*see* Doc. No. 24 at 6), which "allows a plaintiff to establish pretext even without evidence that the 'actual decisionmaker' possessed an unlawful motive." *Singh*, 936 F.3d at 1038. Plaintiff argues her supervisors attempted to improperly influence Mr. Trainor (who made the decision to terminate Plaintiff) and Ms. Parker (who conducted the investigation) by "spoon-feeding" them biased and incomplete information. (Doc. No. 24 at 6-7.) But Plaintiff's argument is unsupported by the record. (*See generally* SSOF ¶¶ 38-47; 81-91.) Moreover, Plaintiff has not shown any "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason" for termination, *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013), or that Defendant acted contrary to company policy or practice by terminating her. *Kendrick*, 220 F.3d at 1230. Thus, even if Plaintiff were to establish a *prima facie* case of age

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant's Motion to Strike (Doc. No. 29) be **GRANTED in part and DENIED in part**, Defendant's Motion for Summary Judgment (Doc. No. 21) be **GRANTED**, and this case be **CLOSED**.

Dated this 22nd day of September, 2025.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge

discrimination by—for example—relying on the now stricken Miller declaration—her claim would fail at the third step of *McDonnell Douglas*.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24–cv–00884–MDB

CARMEN TAFOYA,

Plaintiff,

v.

CITY OF FOUNTAIN

Defendant.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order (Dkt. No. 38) of Magistrate Judge Maritza Dominguez Braswell entered on September 22, 2025it is

**ORDERED** that Motion for Summary Judgment by Defendants City of Fountain (Dkt. No. 38) is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of the defendant and against the plaintiff on all claims for relief and causes of action asserted in this case. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and C.COLO.LCivR 54.1.

Dated this 22nd day of September, 2025.

BY THE COURT:
JEFFREY P. COLWELL, CLERK

By: s/ E. Lopez Vaughan
Deputy Clerk