**CASE NO. 25-1381**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

CARMEN TAFOYA

Plaintiff-Appellant,

v.

CITY OF FOUNTAIN

Defendant-Appellee,

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge Maritza Dominguez Braswell
D.C. NO. 24-CV-00884-MDB

# APPELLEE'S ANSWER BRIEF

Respectfully submitted,

MARNI NATHAN KLOSTER
DANIEL A. JACOBS
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Tel: (303) 691-3737
Email: mkloster@ndm-law.com
Email: djacobs@ndm-law.com

Oral Argument is requested.

January 12, 2026

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iii

GLOSSARY ........ ix

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

1. Facts Warranting Summary Judgment. ........ 3

2. Response to Facts Asserted in Tafoya's Opening Brief. ........ 11

3. Facts Pertinent to the Striking of Miller's Declaration. ........ 18

SUMMARY OF ARGUMENT ........ 24

I. Tafoya Invited or Otherwise Waived or Forfeited Claimed Errors by the District Court. ........ 27

II. The District Court Properly Applied the *McDonnell Douglas* Framework. ........ 31

III. The District Court Properly Dismissed Tafoya's ADEA Claim on Summary Judgment Because There is No Triable Issue at *McDonnell Douglas* Step 1. ........ 39

IV. The District Court's Summary Judgment Dismissal of Tafoya's ADEA Claim Should be Affirmed Because There is No Triable Issue at *McDonnell Douglas* Step 3. ............................ 47

V. The District Court Soundly Exercised its Discretion in Striking Miller's Declaration. ........................................................ 57

CONCLUSION ................................................................................ 64

STATEMENT AS TO ORAL ARGUMENT ............................................ 64

CERTIFICATE OF COMPLIANCE ....................................................... 65

CERTIFICATE OF SERVICE.................................................................. 66

# TABLE OF AUTHORITIES

## CASES

*Akridge v. Alfa Ins. Cos.*,
93 F.4th 1181 (11th Cir. 2024) .......... 46

*Bird v. West Valley City*,
832 F.3d 1188 (10th Cir. 2016) .......... 57

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .......... 46, 47

*Brooks v. CSX, Transp., Inc.*,
No. 3:09-cv-379-J-25TEM, 2013 WL 12091685 (M.D. Fla. Mar. 29, 2013) .......... 43

*ClearOne Commc'ns, Inc. v. Bowers*,
643 F.3d 735 (10th Cir. 2011) .......... 28, 29

*Cone v. Longmont United Hosp. Ass'n*,
14 F.3d 526 (10th Cir. 1994) .......... 56

*EEOC v. BCI Coca-Cola Bottling Co.*,
450 F.3d 476 (10th Cir. 2006) .......... 36, 37

*EEOC v. Chipotle Servs., LLC*,
No. 23-2439-KHV, 2024 WL 4948888 (D. Kan. Dec. 3, 2024) .......... 58, 59

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .......... 31

*Frappied v. Affinity Gaming Black Hawk, LLC*,
966 F.3d 1038 (10th Cir. 2020) .......... 50

*GeoMetWatch Corp. v. Behunin*,

38 F.4th 1183 (10th Cir. 2022) .......................... 29, 31, 39, 46, 47, 51, 57

*Gilooly v. Missouri Dept. of Health & Senior Servs.*,
421 F.3d 734 (8th Cir. 2005) .......................................................... 43

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ........................................................................ 45

*Gross v. Burggraf Const. Co.*,
53 F.3d 1531 (10th Cir. 1995) ......................................................... 44

*Hayes v. SkyWest Airlines, Inc.*,
12 F.4th 1186 (10th Cir. 2021) ........................................................ 31

*Hittle v. City of Stockton,*
145 S. Ct. 759 (2025) ..................................................................... 37

*Iweha v. State of Kansas*,
121 F.4th 1208 (10th Cir. 2024) ........... 33, 35, 41, 48, 50, 51, 52, 53, 55

*Jama v. City & Cnty. of Denver*,
304 F.R.D. 289 (D. Colo. 2014) ...................................................... 60

*Jenny v. L3Harris Technologies, Inc.*,
144 F.4th 1194 (10th Cir. 2025) ...................................................... 37

*Jones v. Oklahoma City Pub. Schs.*,
617 F.3d 1273 (10th Cir. 2010) ................................................ 32, 39, 47

*Kluth v. Spurlock*,
No. 21-cv-03417-NYW-SBP, 2024 WL 6475455 (D. Colo. Apr. 29, 2024) ......................................................................................... 59

*Kulasa v. Wyndham Vacation Rentals N.A., LLC,*
No. 20-1402, 2021 WL 3832343 (10th Cir. 2021) ................................ 44

*Liberty Ins. Corp. v. Brodeur*,
41 F.4th 1185 (9th Cir. 2022) .......................................................... 62, 63

*Lobato v. Ford*,
No. 05-cv-01437-LTB-CBS, 2007 WL 2593485 (D. Colo. Sept. 5, 2007)
.......................................................................................... 58, 59, 61, 62

*Lucero v. Sandia Corp.*,
495 F. App'x 903 (10th Cir. 2012) ................................................ 39, 40

*MacKenzie v. City & Cnty. of Denver*,
414 F.3d 1266 (10th Cir. 2005) ............................................... 40, 41, 42

*Macon v. United Parcel Serv.*,
743 F.3d 708 (10th Cir. 2014) ....................................................... 33, 34

*Markley v. U.S. Bank Nat. Assoc.*,
59 F.4th 1072 (10th Cir. 2023) ............................................... 47, 51, 52

*Mauldin v. Driscoll*,
136 F.4th 984 (10th Cir. 2025) ........................................................... 56

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ..... 1, 10, 24, 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 45, 47

*Milam v. Pafford EMS*,
729 F. App'x 632 (10th Cir. 2018) ...................................................... 44

*Nalder v. West Park Hosp.*,
254 F.3d 1168 (10th Cir. 2001) ........................................................... 57

*Newton v. Unified Government of Wyandotte Cnty. & Kansas City*,
No. 17-cv-2043-JWL, 2018 WL 3122178 (D. Kan. Jun. 26, 2018) ...... 43

*Okland Oil Co. v. Conoco Inc.*,

144 F.3d 1308 (10th Cir. 1998) .......... 29

*Parker v. United Airlines, Inc.*,
49 F.4th 1331 (10th Cir. 2022) .......... 28

*Pelcha v. MW Bancorp, Inc.*,
988 F.3d 318 (6th Cir. 2021) .......... 46

*Peterson v. Martinez*,
707 F.3d 1197 (10th Cir. 2013) .......... 29

*Poitra v. School Dist. No., 1*,
311 F.R.D. 659 (D. Colo. 2015) .......... 58, 60, 61, 62

*Richison v. Ernest Grp., Inc.*,
634 F.3d 1123 (10th Cir. 2011) .......... 42, 48, 60

*Riggs v. AirTran Airways, Inc.*,
497 F.3d 1108 (10th Cir. 2007) .......... 32

*Sellman v. Aviation Training Consulting, LLC*,
155 F.4th 1215 (10th Cir. 2025) .......... 48, 50, 53, 55

*Sender v. Mann*,
225 F.R.D. 645 (D. Colo. 2004) .......... 58, 60, 61

*Simmons v. Sykes Enterprises, Inc.*,
647 F.3d 943 (10th Cir. 2011) .......... 35, 36, 37

*Simmons v. Sykes Enterprises, Inc.*,
No. 08-cv-449-JLK, 2009 WL 4015962 (D. Colo. Nov. 18, 2009) .......... 36

*Singh v. Cordle*,
936 F.3d 1022 (10th Cir. 2019) .......... 33, 34, 35, 42, 53, 55

*Sorbo v. United Parcel Serv.*,

432 F.3d 1169 (10th Cir. 2005) .......... 46

*Spacecon Specialty Contractors, LLC v. Bensinger*,
No. 09-cv-02080–REB–KLM, 2011 WL 721263 (D. Colo. Feb. 23, 2011) .......... 61, 62

*Tadlock v. Lahood*,
550 F. App'x 541 (10th Cir. 2013) .......... 44

*Tara Woods Ltd. P'ship v. Fannie Mae*,
265 F.R.D. 561 (D. Colo. 2010) .......... 59

*Tele-Commc'ns, Inc. v. C.I.R.*,
104 F.3d 1229 (10th Cir. 1997) .......... 27, 29, 30

*Therrien v. Target Corp.*,
617 F.3d 1242 (10th Cir. 2010) .......... 38

*Thomas v. Berry*,
803 F.3d 510 (10th Cir. 2015) .......... 50, 52, 53, 55

*Timmerman v. U.S. Bank, N.A.*,
483 F.3d 1106 (10th Cir. 2007) .......... 41

*Ward v. Jewell*,
772 F.3d 1199 (10th Cir. 2014) .......... 36

*Warner v. DeJoy*,
153 F.4th 109 (1st Cir. 2025) .......... 29

*Wells v. Colo. Dept. of Transp.*,
325 F.3d 1205 (10th Cir. 2003) .......... 37

*Wilkins v. Kmart Corp.*,
487 F. Supp. 2d 1216 (D. Kan. 2007) .......... 62

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*,
170 F.3d 985 (10th Cir. 1999) ........ 24, 57

**STATUTES**

29 U.S.C. § 621 ........ 1

**RULES**

D.C.COLO.MJ § V(10) ........ ix, 11, 44

Fed.R.Civ.P. 26 ........ 2, 23, 57, 61, 62

Fed.R.Civ.P. 26(a) ........ 23

Fed.R.Civ.P. 26(a)(1) ........ 18, 21, 23, 58, 59, 60, 61, 62, 63

Fed.R.Civ.P. 26(e) ........ 60, 61, 63

Fed.R.Civ.P. 26(e)(1)(A) ........ 60

Fed.R.Civ.P. 30(b)(6) ........ 9

Fed.R.Civ.P. 37 ........ 57, 62

Fed.R.Civ.P. 56 ........ 44

Fed.R.Civ.P. 56(c)(1)(A) ........ 44

Fed.R.Civ.P. 56(c)(3) ........ 44

Fed.R.Civ.P. 56(e)(2) ........ 44

Fed.R.Civ.P. 56(e)(3) ........ 44

## GLOSSARY

**FACT/FACTS** – one or more numerically enumerated facts asserted by either party within the parties' **SSOF.**

**SSOF –** the Separate Statement of Facts jointly prepared by the parties pursuant to the D.C.COLO.MJ § V(10) and filed with the United States District Court for the District of Colorado in Case No. 24-cv-844-MDB, because of the City filing for summary judgment.

## STATEMENT OF THE ISSUES

The City restates the issues as follows:

1. Whether Plaintiff-Appellant Carmen Tafoya ("Tafoya") invited or otherwise waived or forfeited errors she is claiming on appeal?

2. Whether the district court properly applied the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell Douglas*"), burden-shifting framework in granting summary judgment dismissal of Tafoya's discrimination claim against the City under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.?

3. Whether the district court properly granted summary judgment dismissing Tafoya's ADEA claim because she failed to establish any triable issue at *McDonnell Douglas* step 1?

4. Whether the district court's summary judgment dismissal of Tafoya's ADEA claim should be affirmed because she failed to establish any triable issue at *McDonnell Douglas* step 3?

5. Whether the district court soundly exercised its discretion in determining Tafoya insufficiently disclosed nonparty declarant Deborah

Miller ("Miller"), in violation of Fed.R.Civ.P. 26, prior to submitting her declaration, after the close of discovery, in response to the City's summary judgment motion?

## STATEMENT OF THE CASE

This is an appeal by Tafoya from the summary judgment dismissal by the District of Colorado, on the City's motion after the close of discovery, of Tafoya's sole claim under the ADEA for alleged age discrimination in the termination of her employment. App. Vol. 3 at 659-677.[1]

Tafoya's Opening Brief purposefully ignores varied facts material to the termination decision and upon which the district court's rulings are based. *See* Opening Br. pp. 5-20. Therefore, the City begins by recounting the relevant facts supporting dismissal of Tafoya's lawsuit. That is followed by pertinent information related to that alleged in

[1] References to the record contained in Tafoya's Appendix are cited using the volume implicated and then relevant page numbers affixed by Tafoya, *i.e.*, App. Vol. __ at __. References to Tafoya's Opening Brief are cited by the relevant page numbers affixed by Tafoya, *i.e.*, Opening Br. p. __.

Tafoya's Opening Brief, followed by particular additional facts relevant to the district court's striking the untimely Miller declaration.

1. **Facts Warranting Summary Judgment.**[2]

Simply put, based on an employment investigation into alleged misconduct by Tafoya, her at-will employment with the City (in its Utilities Department) was terminated on February 17, 2023. App. Vol. 1 at 29-30, 37, 45-46, 53, & 59 (Facts 1, 4-5, 38-39, 72, 75-77, 100, 123).

As a long-time City employee, at all relevant times, Tafoya understood she was required to be familiar with and comply with the City's policies or face discipline, including termination. App. Vol. 1 at 30-37 & 59 (Facts 6, 8-36, 123). Tafoya understood the City's policies surrounding confidentiality of customer information; not using City equipment or systems for personal reasons; not using City equipment and systems in a way that would benefit herself, friends, or family; and the need to avoid conflicts of interest and not attempt to influence others. *Id.* at 30-37 (Facts 6, 8-36). Tafoya acknowledged these were

[2] Unless specifically identified as disputed herein, each of the following cited Facts was admitted by Tafoya in response to summary judgment. *See generally* App. Vol. 1 at 29-60.

important policies whose violation could be a terminable offense. *Id.* at 34-37 (Facts 22, 28, 34-36).

In late 2022, Tafoya was investigated related to her use of City resources to obtain information about a prospective tenant for her family's rental property. App. Vol. 1 at 37 & 39-40 (Facts 37, 39, 48). The investigation was conducted by the then-Assistant City Attorney, Kaitlin Parker ("Parker"). *Id.* at 37 (Facts 39-40). As part of the investigation, Parker interviewed Tafoya, as well as other City employees. *Id.* at 37-39 (Facts 41, 46); *see* App. Vol. 2 at 351-359 & 450.

Pertinent from the investigation, on November 3, 2022, while out of the office, Tafoya repeatedly reached out over the phone and/or by text to co-workers asking them to provide information and/or take action she wanted related to a prospective renter for her family rental property, *i.e.*, for personal, non-work reasons. App. Vol. 1 at 39-41 (Facts 48-52).[3] In reaching out, Tafoya asked her co-worker Dana

---

[3] At no point before the district court did Tafoya legitimately controvert her documented admission to Parker that Tafoya searched for the prospective renter's account information while at work, using a City computer and system, and then shared the search results with her

Daniel ("Daniel") to look up the prospective renter. *Id.* at 40 (Fact 50).[4] When Tafoya returned to the office on November 4, 2022, she then used the City's computer and system to look up the prospective renter herself as well. *Id.* at 41 (Fact 52).[5] Tafoya admittedly shared information she obtained from the City/its system with her husband and son for the purposes of the family rental property. *Id.* at 39-41 (Facts 48 & 52).[6]

---

husband and son, for personal reasons, as the City identified in support and reply of Fact 48. *See id.* at 39-40 (citing App. Vol. 1 at 228-231 (96:21-97:20, 98:2-99:18) & App. Vol. 2 at 355) *see also* Argument, Point III, *infra.* During the investigation Tafoya admitted her actions were to determine whether the perspective renter had a good payment history, and thus, she admitted to more than just looking to see if the customer had a prior City address. *See id.*; *see also* App. Vol. 1 at 56 (per her Fact 113, Tafoya "wanted to find out" this information because the renter may "not have to pay a deposit assuming he had good credit with the City.").

[4] Tafoya tried to qualify her admission to Fact 50. *Id.* While she did not genuinely dispute her own unambiguous testimony to the contrary, *see* App. Vol. 1 at 237-240 & 243 (113:17-22, 114:13-115:8, 116:3-15, 119:13-23), her qualified admission nonetheless confirms she did make this request of Daniel.

[5] While Tafoya tried to qualify her admission to Fact 52, she still admits that she used the City's computer and system to look up the prospective renter. *Id.*

[6] Tafoya never properly disputed in response to Facts 48 & 52, as asserted therein, that she admitted during her investigative interview "to accessing and sharing utility customer account information regarding a prospective tenant for their rental property with her

Tafoya admittedly did not have written authorization from the prospective tenant to look up his City information, nor share it with her family. *Id.* at 41 (Fact 53).

Based on what she uncovered by her investigation, Parker found Tafoya violated numerous City policies through self-motivated conduct done for Tafoya's own personal/familial reasons and benefit. *See* App. Vol. 2 at 351-359; App. Vol. 1 at 37-41 (Facts 39-41, 43, 48, 52). Parker's findings relied on more than a single witness, which is shown in her report's recounting of Tafoya's own interview admissions and other witness statements. App. Vol. 2 at 355-359[7] & 450 (identifying 8

husband and son," and that she looked up the renter "not for City business reasons, but related to her family's rental property and to share it with her husband and/or son." *See* App. Vol. 1 at 39-41. The testimony cited in support of her attempted qualified admission does not dispute these facts. *See id.* (citing *id.* at 238 (114:24-25)); *see* Argument, Point III, *infra.* The evidence the City cited in support of and/or in reply to Tafoya's responses to Facts 48 & 52 can be found at App. Vol. 1 at 228-231, 233, 246-247 (96:21-99:24, 102:5-16, 127:17-128:13), and App. Vol. 2 at 355 & 361 (Resp. to RFA #2). *See also* App. Vol. 2 at 489-497 (57:16-66:9).

[7] The report explicitly supports its findings of Tafoya's policy violations based on what "Tafoya admitted," what "her admissions indicate," and what others, such as "the Utilities Accountant Analyst" and "and "Utilities Billing Specialist," stated in their interviews. *Id.*

witnesses interviewed in investigation); *see also* App. Vol. 1 at 37-39 (Facts 41-42, 45-46). Parker obtained pertinent facts and applied them in an unbiased manner to the policies implicated in rendering her findings that Tafoya violated multiple policies. App. Vol. 1 at 37-39 (Facts 41-43, 45-46).[8]

Tafoya does not know who made the decision or played a role in the decision to terminate her employment. *Id.* at 45-46 (Fact 74). The decision to terminate Tafoya's employment was made by the City Manager, Scott Trainor ("Trainor"). *Id.* at 46 (Fact 75). Trainor based his decision on the information documented in Parker's investigative report and that contained in a draft corrective action form. *Id.* (Fact 76). Trainor did not consider Tafoya's age. *Id.* at 46-47 (Fact 79). None of the limited individuals Trainor conferred with (then-City Attorney Troy Johnson ("Johnson"), then-Human Resources Director Connie

[8] Tafoya sought to dispute this by theorizing "bias" had been "built into" Parker's "assignment." *Id.* at 38 (Tafoya's response to Fact 43); *see also id.* at 55 (Fact 109). To the contrary, "[i]nvestigations usually arise from these sorts of reported concerns"; "the entire purpose of an investigation is to establish the actual facts and prove or disprove the existence of any policy violations, which is exactly what occurred here." *Id.* at 38 (City's reply on Fact 43); *see* Argument, Point IV, *infra.*

Brisnehan ("Brisenhan"), and Utilities Director Dan Blankenship ("Blankenship")) in making the decision referenced age. *Id.* at 43-44, 47 (Facts 63, 81-82). Blankenship, as it related to his conferral with Trainor about the termination, and Parker, as it related to her investigation relied upon by Trainor in deciding to terminate, each testified they did not consider Tafoya's age. App. Vol. 1 at 47-48 (Facts 84, 87).

Of importance, the lower-level supervisor upon whom Tafoya's similarly situated comparator and cat's paw arguments are premised, Brett Robinson ("Robinson"), *see* Opening Br. pp. 11, 13-16, 21-22, 30-37, never consulted with Trainor about the termination of Tafoya's employment or her found policy violations. App. Vol. 1 at 47 & 53 (Facts 81, 102); App. Vol. 2 at 433 (10:18-11:6). Robinson's connection is limited to his initial reporting of concern and his participation, as but one witness, in Parker's investigation. *Id.* at 47 & 55-56 (Facts 81, 110-112); App. Vol. 2 at 433 (8:20-9:23, 10:18-11:6), 446-447 (10:19-11:23, 16:9-13), 449 (42:3-15), & 450-455.

The City's ultimate decisionmaker on the termination (Trainor) was not shown to have known or even suspected, in deciding to terminate, that another City employee allegedly breached the confidentiality, personal use, and other policies in the same or similar manner as Parker's investigation found Tafoya to have. *See* App. Vol. 1 at 49 & 55 (Facts 93, 108); App. Vol. 2 at 391-394 (32:3-14, 35:22-37:12), 416 (53:12-16), & 437 (36:1-37:3). The City's Fed.R.Civ.P. 30(b)(6) witness testified that when Trainor made the termination decision, the City was unaware of another employee who breached the policies like Tafoya had been shown to in the investigation. App. Vol. 1 at 49 (Fact 93). When Trainor decided to terminate Tafoya's employment, he therefore lacked awareness that another City employee (*i.e.,* Daniel) had purportedly violated the same confidentiality policy as Tafoya. *Id.* at 55 (Fact 108). There is no record evidence of Parker having identified an allegation of misconduct against Daniel in her investigative report relied on by Trainor, nor that Parker was advised of such an allegation prior to or during her investigation. *See* App. Vol. 2 at 351-359, 450. Of importance, Tafoya never alleged to the district court at any point that

Daniel acted (like Tafoya) for personal/familial reason/benefit, with a conflict of interest, and improperly attempted to influence others in the process. *See* App. Vol. 1 at 30-36, 39-43, 46, & 53-59 (Facts 6, 8-36, 48-57, 77, 100-101, 105, 108, 112, 117-118, 121-122).

Moreover, the City has an undisputed history of employing individuals of the same age or older than Tafoya. *Id.* at 43 (Facts 59, 60). It is also undisputed that of those who engaged in billing and customer service in Utilities at the time of Tafoya's separation, 90% were over the age of 40, with 1/3 being in their sixties and another employee being older than Tafoya. *Id.* at 48 (Fact 86). Moreover, it is undisputed Tafoya was not pressured into retiring, nor did she offer evidence she had been replaced by a younger employee. *Id.* at 43-44 (Facts 62-67).

The district court applied the *McDonnell Douglas* framework in ruling on summary judgment. App. Vol. 3 at 671-674. In application, the court considered the undisputed facts, which supported that Tafoya did not satisfy her burden to establish a triable issue under element 4 of the required *prima facie* case (step 1). *Id.*; *see also id.* at 660-661. The

court specifically noted Tafoya never disputed the City's assertion that Trainor, Blankenship, and Robinson "were all unaware of Ms. Daniel's purported conduct" at the time and, therefore, Daniel was not "similarly situated" to Tafoya. *Id.* at 673 (citing Facts 93 & 108). The court, at footnote 4, alternatively held at step 3 that Tafoya failed to raise a triable issue of fact over pretext. *Id.* at 674-675. The court expressly rejected Tafoya's cat's paw theory that "her supervisors attempted to improperly influence Mr. Trainor … and Ms. Parker … by 'spoon-feeding' them biased and incomplete information" as "unsupported by the record." *Id.*

2. **Response to Facts Asserted in Tafoya's Opening Brief.**

Tafoya's Opening Brief effectively seeks to have this court only consider the Facts she alleged in the parties' joint Separate Statement of Facts ("SSOF"). *See* Opening Br. pp. 8-14; *see also* D.C.COLO.MJ § V(10). The legitimate basis for her position is unclear.[9] The undisputed

---

[9] The Opening Brief hollowly protests that the City would not admit certain facts on summary judgment. *See* Opening Br. pp. 6-7. In actuality, the City reasonably admitted any competent evidence cited by Tafoya, while citing additional evidence that refuted and/or clarified

or never properly disputed facts identified by the City within the SSOF were directly relevant to Tafoya's ADEA claim and thus this appeal.

Tafoya's Opening Brief asserts Trainor cabined the basis of his termination decision to "two reasons: accessing the renter's information and asking to the waive the renter's deposit," and that "[i]n other words, as far as [he] was concerned, the other violations were minor." Opening Br. p. 32. But such is not reasonably inferable from his testimony.[10] In attempting to imply that such is the sole basis or reason(s) for her termination, Tafoya contradicts her own assertion in Fact 100, *i.e.*, that Trainor "relied on the facts in … the termination letter … and in the abbreviated investigation report." *See* App. Vol. 1 at 53. The letter and

---

that which Tafoya alleged. *See* App. Vol. 1 at 49-59 (City's responses to Facts 94-123).

[10] Tafoya expressly cites to Trainor's testimony that what led to his decision included Tafoya improperly accessing "information to benefit themselves," on top of accessing that information without authorization and attempting to "influence" those at the City "to sort of waive the deposit." Opening Br. p. 9 n. 2 (citing App. Vol. 2 at 434-35 (15:19-16:4)); *see also* App. Vol. 2 at 489-498 (Trainor's testimony showing no reasonable dispute that he considered a substantial violation of City policy Tafoya's actions for personal/familial reasons and with a conflict of interest, and also, her conveyance of the renter's confidential information to her family).

Parker's report undeniably provided Trainor extensive detail regarding Parker's investigation, facts obtained during the investigation, and findings beyond just Tafoya improperly attempting to influence others or accessing confidential customer information.[11]

Similarly, the Opening Brief's slanted narrative sidesteps the meeting with Trainor (as noted in Tafoya's Fact 102) where Blankenship, Brisnehan, and Johnson "walked" Trainor through the corrective action form and investigative report. *See* Opening Br. pp. 9, 35-36; App. Vol. 1 at 25. This narrative ignores the absence of proof of Robinson assisting in the drafting of the form or report, having been a meeting attendee, or even more generally ever being involved in the termination decision-making. *See* App. Vol. 1 at 46-47, 53-56, & 58 (Facts 75-77, 81, 100-112, 120); App. Vol. 2. at 433 (10:18-11:6). It was undisputed Trainor never consulted with Robinson about Tafoya and

[11] The corrective action form identifies six different City policies Parker's investigation found Tafoya violated, some with several provisions violated. *See* App. Vol. 2 at 441-443. It is clear from the plain language of that form, as well as Parker's report, *see* App. Vol. 2 at 351-359, that Tafoya's employment was terminated by Trainor in reliance on the various findings and policy violations found by Parker and not solely because of a single issue.

that Robinson was uninvolved in Trainor's decision to terminate Tafoya's employment. *See id.*; *see also* App. Vol. 2 at 417-424 (no contrary assertion in Tafoya's summary judgment response).

The Opening Brief further sidesteps, *see* Opening Br, p. 10, that Tafoya admitted to Parker to having asked City employees for the prospective renter's account to be looked up, and to see if the deposit could be waived, which is noted in the City's reply to Fact 105 and documented in Parker's report. *See* App. Vol. 1 at 54 (citing App. Vol. 2 at 444). What others told Parker they assumed was Tafoya's intent does not change or dispute Tafoya's own admitted conduct and intent.[12]

Fundamentally, Tafoya belies her request for this court to focus solely on her claimed "dispositive facts" within the SSOF by her reliance on alleged facts not contained and supported therein. Tafoya asserts

---

[12] Tafoya's citation to Trainor's testimony in Fact 106 recounts his inability to recall any discussion regarding reconciliation of others' recollection of Tafoya's requests and her contrary admissions. But consistent with her own asserted facts, Trainor "relied on the facts" within Parker's report that included Tafoya's admissions on the subject. *See* App. Vol. 1 at 53 (Fact 100). Trainor was allowed to rely on Tafoya's own admissions as to her conduct and intent in deciding to terminate her employment.

that the district court "missed …. Robinson's knowledge of" the alleged misconduct of Daniel, that there is "at least a factual issue that Robinson could see that plaintiff received the renter's payment numbers from Daniel," and specifically, that Robinson did not "question Ms. Daniel's involvement in the matter when he forwarded the text message to the city attorney on December 6" and "ask the investigator to investigate Ms. Daniel also." Opening Br. pp. 14-16. In making these assertions, Tafoya ignores her admission within the SSOF that Robinson was "not aware of any other employee who breached the confidentiality and other policies like Plf had." App. Vol. 1 at 49 (Fact 93). Moreover, at no point did Tafoya contend to the district court on summary judgment that prior to Trainor's decision, Robinson even suspected alleged misconduct by Daniel and disregarded the same. *See id.* at 49, 55-56, & 58-59 (Facts 93, 108, 110-112, 119-123); App. Vol. 2 at 417-424. Rather, it was undisputed, *see id.,*[13] that Robinson lacked

[13] Tellingly, Tafoya provides no supportive record citation for her contention that it "was disputed" that Robinson "did not know of other employees who accessed information that the employee should not have accessed… ." *See* Opening Br. p. 11 n.3.

awareness "of any employee other than Ms. Tafoya who improperly accessed … information that she shouldn't or provided information she shouldn't to third parties" and of whether "any City employee actually gave … Ms. Tafoya" the customer's information. App. Vol. 2 at 516 (53:12-20).[14] At most, Tafoya misrepresented to the district court, based on citation only to the at-issue text itself, that "Robinson sent Parker a November 3, text message that Dana Daniel had sent to plaintiff." *See* App. Vol. 1 at 56 (Fact 112).[15]

---

[14] Tafoya does after-the-fact try to take the sting out of her unqualified admission to Fact 93 by now asserting she only admitted it "because she had no direct evidence that Blankenship (not Robinson) knew of Daniel's involvement." *See* Opening Br. pp. 19-20 n.8. If that could have been supported by admissible evidence, Tafoya would have qualified her admission and cited to admissible evidence supporting Robinson knew of or at least suspected Daniel of improper disclosure of information to Tafoya. But Tafoya did not do so, whether in response to Fact 93 or, more generally, elsewhere in the SSOF and her summary judgment briefing. *See* App. Vol. 1 at 29-59; App. Vol. 2 at 417-424. There is no error in relying on the unqualified admission by Tafoya to Fact 93. *See* Argument, Point III, *infra.*

[15] That was directly contradicted by the face of the text exchange, which shows the text with the customer's information was sent by Tafoya (not Daniel) and Robinson's testimony confirming Tafoya as the sender. *See* App. Vol. 2 at 455; *id.* at 429 (40:6-41:15).

Contrary to Tafoya's surmise now, *see* Opening Br. pp. 13-16, 31-32, there is no record support that prior to terminating Tafoya's employment any City supervisor suspected Daniel of engaging in similar misconduct. Tafoya never previously established that the only way she could have obtained the prospective renter's "delinquent-payment information was from Daniel because plaintiff could not look up that information from home." *See* App. Vol. 1 at 58 (Fact 119). Robinson's cited testimony acknowledges Tafoya had to have obtained the dollar amounts she texted from somewhere. *Id.* (citing App. Vol. 2 at 430 (50:22-51:1)). However, Robinson testified to various ways such information could have been known or obtained by Tafoya, without Daniel providing it. *Id.* (City reply to Fact 119, citing App. Vol. 2 at 516-517 (53:12-54:18)).[16] Robinson agreeing that Daniel would have violated the City's confidentiality policy if she had provided Tafoya the

[16] Tafoya mistakenly claims at footnote 6 of her Opening Brief that the City did not submit page 54 of Robinson's deposition. That page is located at App. Vol. 2 at 517. The City submitted the testimony as part of its reply; specifically, as part of exhibit 30, cited within the reply to Facts 119 & 120, which included additional testimony. *See* App. Vol. 1 at 58.

information, *see* App. Vol. 1 at 58 (Fact 120), does not undermine the lack of record proof showing Robinson (or City management) knew or suspected Daniel conveyed the renter's confidential information to Tafoya, and of an alleged violation by Daniel in the process, before Trainor made his decision to terminate Tafoya's employment.

3. **Facts Pertinent to the Striking of Miller's Declaration.**

Tafoya issued her Fed.R.Civ.P. 26(a)(1) initial disclosures on May 23, 2024. App. Vol. 3 at 573-574. Therein, she listed Miller as a witness, but failed to provide any contact information, and only perfunctorily identified Miller as a "supervisor under Mr. Robinson" who vaguely and ambiguously had "information regarding how plaintiff performed her job and why she was terminated." *Id.* at 573. Following her initial disclosures, Tafoya served four supplemental disclosures, the last of which is dated November 1, 2024. *Id.* at 576-583. None provided further disclosure about Miller. *See id.* Discovery in this lawsuit closed on November 15, 2024, and the City thereafter filed its summary judgment motion. App. Vol. 1 at 2-3 (Dkt. Nos. 13 & 21).

In the face of summary judgment, Tafoya disclosed for the first time a declaration from Miller containing assertions, which if true, should have been included or referenced in Tafoya's disclosures, responses to written discovery and deposition testimony, but were not. *See* App. Vol. 2 at 440. This included an allegation that Robinson had remarked to Miller on some unspecified date about not hiring some other older person. *Id.* It also included allegations that Miller "should have been involved in the decision to terminate" Tafoya, but "was not"; Tafoya having "looked up to see whether her husband's renter had been a prior utility customer….would not have caused a termination and, had I been told of her termination, I would have opposed it"; and that Miller had "resigned a few months after … because I could see that the younger employees were manipulating the supervisors against some of us older employees" that that Daniel "took over my position." *Id.*

None of these allegations were referenced, even obliquely, in Tafoya's responses to interrogatories, whether initially or through supplementation before the discovery cut-off. *See* App. Vol. 3 at 600-625.

Such omissions occurred despite interrogatories requiring Tafoya "identify and describe":

- "[W]hy you claim your employment was terminated because of your 'age and physical condition'" as Tafoya had alleged;
- The "substance of each statement or admissions against interest or any statement you believe supports your claims in connection with the issues involved in the litigation" that had been made by "current or former officers, employees, or representatives of the City"; and
- The "substance" of "any communications concerning your claims, this lawsuit, allegations in this lawsuit, or your damages" that "you have had" with "any current or former city employee… ."

*Id.* at 588-590 (Interrogatories 7, 12, & 16). The accompanying instructions to the interrogatories expressly requested Tafoya "furnish all information available to you, including information in the possession of attorneys, … and not merely such information as is known by you based on personal knowledge." *Id.* at 584; *see also id.* at 585 (defining "you" and "your" to include Tafoya's counsel). Tafoya raised no objection

in response to the interrogatories, including that requested information was privileged or otherwise protected from disclosure. *See id.* at 601, 603-604, 614, & 616-617.

Tafoya was also deposed during the discovery period on September 25, 2024, a little under two months before the discovery cut-off. *Id.* at 535. Tafoya's testimony did not put the City on notice of what she later solicited through Miller's declaration, but rather, highlighted just the opposite, *i.e.*, Miller's lack of relevance and knowledge as to the various items raised within her declaration. *See, e.g., id.* at 538, 560-563, & 569-571 (26:7-16, 144:1-147:18, 205:11-21, 246:18-247:2). In fact, Tafoya went so far as to contradict her prior Rule 26(a)(1) disclosures and Miller's involvement by specifically rejecting Miller's "knowledge of the particulars" of the termination of Tafoya's employment and affirmed Miller "didn't have a clue of what happened." *Id.* at 563 (147:15-18). At no point following her deposition, but before the discovery cut-off, did Tafoya supplement her Fed.R.Civ.P. 26(a)(1) disclosure related to Miller. *See id.* at 580-583.

Miller's declaration is dated January 16, 2025, see App. Vol. 2 at 440, i.e., over a month after the City had filed its summary judgment motion and over two months after discovery cut off. Tafoya made no claim below of having been prevented in some fashion before the cut-off from obtaining and supplementing disclosures/discovery related to Miller. *See* App. Vol. 3 at 632, 636-638. There is likewise nothing indicating that Tafoya or her counsel could not have contacted Miller, obtained her declaration and statement(s) prior to the cut-off, and timely disclosed/supplemented them. *See id.*[17]

Instead of complying with the rules, Tafoya strategically chose to not properly disclose Miller. Tafoya's conduct prejudiced the City because it was denied the opportunity to confront Miller regarding her allegations or conduct other discovery related thereto. Before the discovery cut-off, there was no reason for the City to depose Miller considering Tafoya's sworn discovery responses and testimony

[17] While Tafoya's counsel claimed to have misplaced Miller's contact information as justification for the failure to disclose it, *see id.* at 636, Tafoya confirmed having post-termination contact with Miller. *See id.* at 538, 560-563, & 570-571 (26:7-16, 144:1-147:18, 246:18-247:2).

perpetuated a lack of relevance of Miller to the case. Miller's supposed required but excluded involvement in the City's termination decision, alleged unrelated statement by Robinson, and the circumstances of Miller's own separation are not even covered by the vague and overly generalized subjects of testimony in Tafoya's Rule 26(a)(1) disclosure of Miller.

The City agrees with the district court that the objective circumstances demonstrate Tafoya submitted Miller's untimely declaration because "Plaintiff did not like her chances on summary judgment and swung for the fences... ." App Vol. 3 at 666. Despite the court's noted reluctance, it properly found the facts before it merited its exercise of discretion in striking Miller's declaration. *Id.* at 663-669. The court rejected Tafoya's argument that her disclosures did not violate Fed.R.Civ.P. 26 as allowing "anyone … [to] avoid the disclosure requirements of Rule 26(a)" for a fact witness by only "offer[ing] a high-level perfunctory statement that the witness has relevant information about the claims, do[ing] nothing to uncover the specific information the witness might offer, and wait[ing] until a dispositive motion is filed to

offer specific statements, carefully crafted to avoid summary judgment." *Id.* at 666. The court remarked "[t]he Rules require diligence up front, precisely to avoid this type of 'gotcha' litigation." *Id.* The court then proceeded to strike the declaration based on the application of the four-factor analysis set forth in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). *Id.* at 666-669. The court ultimately disapproved of Tafoya's "tactics" because otherwise the court "would permit trial by ambush and undermine the fairness that the disclosure rules are designed to protect." *Id.* at 669.

## SUMMARY OF ARGUMENT

Tafoya has waived or forfeited many of her arguments on appeal through invited error and procedural default. In particular, she expressly conceded below that her ADEA claim lacked direct evidence and argued for denial of summary judgment under the *McDonnell Douglas* framework, specifically requesting application of her cat's paw theory at step 3 to demonstrate pretext. Having invited the district court to apply *McDonnell Douglas* and apply Tafoya's cat's paw argument to the pretext analysis, she cannot now claim error in

application of that very approach. Alternatively, Tafoya forfeited that argument, making it subject to review for plain error, which she then waived by her failure to invoke plain error in her Opening Brief.

Regardless, the district court did not plainly err in applying the *McDonnell Douglas* framework to Tafoya's circumstantial evidence ADEA claim. Cat's paw theories operate within the *McDonnell Douglas* framework, not as a substitute for that analysis. Tafoya's argument contradicts binding Tenth Circuit authority and lacks support in controlling law.

Moreover, Tafoya failed below to establish a triable issue on her *prima facie* case at *McDonnell Douglas* step 1. The focus of this analysis is on the intent of the decisionmaker. Tafoya cannot demonstrate Daniel was similarly situated because the decisionmaker (Trainor) and those he consulted had no knowledge of alleged similar misconduct by Daniel prior to terminating Tafoya. Neither can Tafoya demonstrate Daniel engaged in comparably serious alleged misconduct.

Tafoya's cat's paw theory alternatively fails at *McDonnell Douglas* step 3 because the causal chain was broken by the independent

investigation conducted by Parker on which Trainor relied. Parker conducted an unbiased investigation. While Parker relied on Tafoya's own admissions of policy violations, Parker also interviewed multiple witnesses and made findings based on all the evidence she obtained. Trainor's independent decision to terminate based on the investigation's findings defeats the cat's paw theory. And there is simply no competent record proof of subordinate bias.

The district court appropriately exercised its discretion in striking Miller's declaration. Tafoya's perfunctory disclosure of Miller was limited to her having knowledge about "how plaintiff performed her job and why she was terminated." Tafoya's own testimony disclaimed Miller's knowledge of the termination particulars. Despite Tafoya's limited disclosure and own testimony, she sought an after-the-fact declaration, which contradicted facts previously disclosed and sworn to. Tafoya's intentional conduct was prejudicial to the City and warranted striking Miller's declaration.

# ARGUMENT

## I. Tafoya Invited or Otherwise Waived or Forfeited Claimed Errors by the District Court.

"Generally, an appellate court will not consider an issue raised for the first time on appeal." *Tele-Commc'ns, Inc. v. C.I.R.*, 104 F.3d 1229, 1232 (10th Cir. 1997). In Tafoya's response to the City's summary judgment motion, she conceded her case was premised on a pure age discrimination claim under the ADEA, unsupported by any direct evidence. *See* App. Vol. 2 at 419-420. Tafoya expressly did "not contest defendant's explanation of the *McDonnell Douglas* manner of proving discrimination." App. Vol. 2 at 419 (footnote 3). She also never argued against the application of the *McDonnell Douglas* framework. *See* App. Vol. 2 at 417-424. Instead, Tafoya argued there were triable issues under that framework concerning: (1) her ability to establish her *prima facie* case at step 1; and (2) her ability to establish pretext at step 3. *See id.*

With respect to her *prima facie* case (step 1), Tafoya argued there was a triable issue over whether she had been treated less favorably in her termination than the allegedly similarly situated Daniel. *See id.* at

418-422. Moreover, Tafoya argued there was a triable issue over pretext (step 3) through a "cat's paw evidentiary theory" that (purportedly) would "prove that the reason for her termination was an excuse to cover up discrimination" and "that the City made up a reason to terminate plaintiff." *See id.* at 422-423. Tafoya at no point argued her "cat's paw evidentiary theory" could not be reconciled with and therefore supplanted application of the *McDonnell Douglas* framework. *See id.* at 417-424.

The foregoing establishes Tafoya invited her now claimed error in the district court applying "the *McDonnell Douglas* test in a case based upon a cat's paw theory." Opening Br. pp. 21, 23-30, 33 n.13. Through her own arguments in opposition to summary judgment, Tafoya "invit[ed] the district court to reject the argument that she's now making." *Parker v. United Airlines, Inc.*, 49 F.4th 1331, 1338–39 (10th Cir. 2022). By not only failing to argue *McDonnell Douglas* was inapplicable, but also encouraging its very application, Tafoya "invit[ed]" the court's reasoning in assessing the viability of her ADEA claim. *See id.*; *see, e.g., ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d

735, 771 (10th Cir. 2011); *Peterson v. Martinez*, 707 F.3d 1197, 1208 (10th Cir. 2013); *Warner v. DeJoy*, 153 F.4th 109, 113-14 (1st Cir. 2025). When invited error is shown, like here, it demonstrates the party "intentionally relinquished or abandoned" the argument asserted on appeal and renders the purported error an unreviewable, waived argument. *ClearOne Commc'ns,* 643 F.3d at 771. Consequently, this Court should find Tafoya's argument to have been waived.

But even if Tafoya did not invite her claimed error, and thus did not waive it, she still forfeited her newly minted argument by failing to develop before the district court that the *McDonnell Douglas* framework did not apply. "Changing to a new theory on appeal that falls under the same category as an argument presented at trial … is not adequate to preserve issues for appeal." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998). The theory alleged by Tafoya below, *see* App. Vol. 2 at 417-424, was insufficient to preserve the argument she now makes. *Tele-Commc'ns*, 104 F.3d at 1233; *see GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1206-07 (10th Cir. 2022). The lack of a developed argument by Tafoya to the district court on the

inapplicability of the *McDonnell Douglas* framework "deprived that court of the opportunity to analyze and rule on this issue now raised in detail for the first time on appeal." *Tele-Commc'ns*, 104 F.3d at 1234. Tafoya thus forfeited the argument.

Under the same governing analysis, Tafoya also forfeited her new argument on appeal that she can satisfy her *prima facie* case at *McDonnell Douglas* step 1 based on Robinson having purportedly known of Daniel's potential misconduct but failing to report the same. *See* Opening Br. pp. 11, 14-16, 21-22, 30-33. At no point below did Tafoya oppose summary judgment, with citation to admissible evidence, in support of a claim that Robinson knew of Daniel's potential misconduct, and therefore, a triable issue existed. *See* App. Vol. 2 at 417-424; App. Vol. 1 at 29-59. Instead, Tafoya unqualifiedly admitted Fact 93 that Robinson was "not aware of any other employee who breached the confidentiality and other policies like Plf had." App. Vol. 1 at 49; *see also* Statement of the Case, Sec. 2, *supra*. At no point below did Tafoya even tangentially reference her appeal argument, *see* Opening Br. pp. 31-32, that Robinson's purported "willful blindness"

supports a reasonable inference of his knowledge. *See* App. Vol. 2 at 417-424. Tafoya's failure to even present, let alone sufficiently develop before the district court, her now-proffered theories of Robinson's knowledge, including by qualifying or denying what she outright admitted within the SSOF, gave the court no opportunity to evaluate and decide her argument. Tafoya thereby forfeited the argument on this appeal. *See, e.g., Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021).

Plain error review applies to forfeited arguments. Because Tafoya's Opening Brief does not develop its arguments under plain error review or even invoke plain error, *see* Opening Br. pp. 21-37, Tafoya has also "effectively waived" each of her forfeited arguments. *Fish v. Kobach*, 840 F.3d 710, 729-30 (10th Cir. 2016). She cannot belatedly try to fix such and raise plain error in her Reply Brief. *GeoMetWatch*, 38 F.4th at 1207.

## II. The District Court Properly Applied the *McDonnell Douglas* Framework.

Contrary to Tafoya's misstatements in her Opening Brief, it is far from a "matter of first impression" in the Tenth Circuit, *see* Opening Br.

p. 21, whether the *McDonnell Douglas* framework is displaced upon a plaintiff's invocation of a "cat's paw" theory. To the extent this Court treats this forfeited argument not as invited error or effectively waived, *but see* Argument, Point I, *supra*, the district court did not plainly err in requiring Tafoya to establish triable issues under the *McDonnell Douglas* framework and applying her cat's paw theory at step 3.[18]

Authoritative Tenth Circuit precedent makes clear that a plaintiff faced with summary judgment dismissal of their ADEA claim, premised entirely on indirect/circumstantial evidence, must show a triable issue of fact under the *McDonnell Douglas* framework for the claim to be submitted to a jury. *Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1278-79 (10th Cir. 2010); *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1115-18 (10th Cir. 2007). Tafoya conceded below that her ADEA case was premised only on indirect/circumstantial evidence. App. Vol. 2 at 420. Despite that, Tafoya seeks this court throw out application of the

[18] To the extent Tafoya is not found to have waived or invited any error, plain error review would apply to this forfeited argument. *See id.* Assuming *arguendo* it is preserved, the City submits the following analysis and authorities foreclose any argument by Tafoya even under *de novo* review.

*McDonnell Douglas* framework when a plaintiff asserting discrimination under the ADEA invokes a cat's paw theory, even though the plaintiff's only evidence is indirect or circumstantial and, therefore, the framework's application is required under well-settled law. *See* Opening Br. pp. 26-30. Tafoya "has not pointed to any precedents clearly showing that [this court] can ignore the *McDonnell Douglas* framework… ." *Singh v. Cordle*, 936 F.3d 1022, 1041 (10th Cir. 2019); *see* Opening Br. pp. 21, 23-30, 33 n.13.

Moreover, Tenth Circuit case law has applied the *McDonnell Douglas* framework to claims of discrimination and retaliation under federal civil rights statutes premised on circumstantial/indirect evidence, even in the face of the plaintiff's invocation of a cat's paw theory, and have applied that theory at *McDonnell Douglas* step 3, as a manner of demonstrating pretext. *See, e.g., Iweha v. State of Kansas*, 121 F.4th 1208, 1225-32 (10th Cir. 2024); *Macon v. United Parcel Serv.*, 743 F.3d 708, 715 (10th Cir. 2014). This court has expressly held it to be and has applied it as a "theory of pretext." *Iweha*, 121 F.4th at 1225.

Contrary to Tafoya's misstatements, the Tenth Circuit has addressed "how the *McDonnell Douglas* three-part test and the cat's-paw theory test relate" and specifically "how it relates to a *McDonnell Douglas* theory of proof… ." Opening Br. p. 24. Specifically, a cat's paw theory "allows a plaintiff to establish pretext even without evidence that the 'actual decisionmaker' possessed an unlawful motive." *Singh,* 936 F.3d at 1038 (citation omitted). As *Macon* noted, pretext under *McDonnell Douglas* is assessed by "looking at the final result of the disciplinary process, not the acts or motives of those who may be in the decision-making chain," and with a cat's paw theory, the focus is still on that "final result"; specifically, any uncritical reliance by the decisionmaker(s) on "biased reports or conclusions" of a subordinate. 743 F.3d at 715. As the *Singh* court held, "the pretext inquiry of *McDonnell Douglas* is not about general corporate knowledge but rather about the intent of the decisionmaker, or in the case of cat's-paw liability, the intent of the biased subordinate and his or her effect on the decisionmakers." 936 F.3d at 1041 (citation omitted).

It is hard to imagine, given this authority, how Tafoya sincerely argues in her Opening Brief that the interplay between the *McDonnell Douglas* framework and a cat's paw theory is a matter of first impression within the Tenth Circuit. An interpretation of all this Tenth Circuit precedent in a manner that "permits them to coexist harmoniously" with the purportedly inconsistent case law cited by Tafoya in her Opening Brief (at pages 23 to 29) shows the Tenth Circuit has already resolved that a cat's paw theory operates within the *McDonnell Douglas* framework, specifically at step 3. *See Iweha*, 121 F.4th at 1228; *see also Singh*, 936 F.3d at 1041.

Tafoya similarly mischaracterizes *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943 (10th Cir. 2011) to fit her inaccurate narrative. *See* Opening Br. pp. 23-24. In contrast to her argument, the *Simmons* court unquestionably applied the *McDonnell Douglas* framework to an ADEA discrimination claim when the plaintiff asserted a cat's paw theory as a manner of demonstrating pretext at step 3. *Id.* at 947, 949-50 (holding "we evaluate her ADEA claim using the three-step framework outlined

in *McDonnell Douglas*," and then, within that framework, assessing the plaintiff's cat's paw theory in affirming finding of no pretext).[19]

Tafoya's citations to *Ward v. Jewell*, 772 F.3d 1199 (10th Cir. 2014) and *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476 (10th Cir. 2006), *see* Opening Br. pp. 26-29, also supports the City's position, rather than undermines it. In *Ward*, the Tenth Circuit had no issue applying the *McDonnell Douglas* framework to find a cat's paw theory could not establish a *prima facie* case of retaliation on the suit's facts.[20] 772 F.3d at 1202-05. In *BCI Coca-Cola*, the Tenth Circuit faced an

[19] The *Simmons* court did not evaluate the *prima facie* case at step 1 because there was no appeal of the lower court's ruling at that step. *See id.* at 945, 947. The lower court's ruling had assumed without deciding the plaintiff had established a *prima facie* case. *Simmons v. Sykes Enterprises, Inc.*, No. 08-cv-449-JLK, 2009 WL 4015962, at *4 (D. Colo. Nov. 18, 2009)

[20] The plaintiff's argument in *Ward* that a cat's paw theory can satisfy a *prima facie* case is one Tafoya forfeited by never raising it to the district court. *See* App. Vol. 2 at 417-424; Argument, Point I, *supra*. In her Opening Brief, Tafoya also has not argued the district court plainly erred in finding no triable issue on Tafoya's establishment of a *prima facie* case based on her invoked cat's paw theory. *See* Opening Br. pp. 21-22, 30-33. Thus, such argument is "effectively waived" by Tafoya. *See* Argument, Point I, *supra*. And, as discussed below, with respect to Tafoya's cat's paw arguments at *McDonnell Douglas* step 3, even under *de novo* review, there is no error in the district court having found no triable issue. *See* Argument, Point IV, *infra*.

appeal (like in *Simmons*) in which the lower court's findings on the existence of triable issues at *McDonnell Douglas* steps 1 & 2 were conceded, and thus at step 3 proceeded to analyze pretext via the plaintiff's proffered cat's paw theory. *BCI Coca-Cola*, 450 F.3d at 483-89. Each case is controlling precedent applying a plaintiff's cat's paw theory within the *McDonnell Douglas* framework, rather than displacing the framework's application, as now argued by Tafoya.

Finally, as for the Tenth Circuit concurrences and dissent from denial of certiorari by the U.S. Supreme Court cited*, see* Opening Br. pp. 23, 26, they are mere dicta on and non-binding criticism of the *McDonnell Douglas* framework's continuing efficacy. None reference a cat's paw theory or any contention like that in the Opening Brief. *See Hittle v. City of Stockton,* 145 S. Ct. 759 (2025) (Thomas, J., dissenting); *Jenny v. L3Harris Technologies, Inc.*, 144 F.4th 1194, 1201-03 (10th Cir. 2025) (Eid, J., concurring); *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1221-28 (10th Cir. 2003) (Hartz, J., concurring). Such nonauthoritative commentary cannot create a contradiction or

inconsistency given the well-settled Tenth Circuit law cited by the City foreclosing Tafoya's argument.

Summarily, under controlling Tenth Circuit precedent, a plaintiff does not oust the application of *McDonnell Douglas* on summary judgment by invoking a cat's paw theory. Instead, the controlling law confirms a cat's paw theory is a manner by which a plaintiff can demonstrate within the *McDonnell Douglas* framework, at step 3,[21] that the decisionmaker pretextually effectuated their subordinate's own discriminatory or retaliatory intent, resulting in an otherwise unbiased decision becoming irredeemably tainted by the subordinate's intent.

Given the foregoing, and Tafoya's arguments below, the district court did not plainly err in applying the *McDonnell Douglas* framework to Tafoya's ADEA discrimination claim and evaluating her cat's paw theory at step 3. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1253 (10th Cir. 2010) (to demonstrate "plain error" one must identify error that is "clear or obvious under current law.").

---

[21] The cases show that a cat's paw theory can potentially also be used at McDonnell Douglas step 1.

## III. The District Court Properly Dismissed Tafoya's ADEA Claim on Summary Judgment Because There is No Triable Issue at *McDonnell Douglas* Step 1.

On an ADEA claim, at step 1 of the *McDonnell Douglas* framework:

> a plaintiff must show: 1) she is a member of the class protected by the ADEA; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class.

*Jones*, 617 F.3d at 1279 (quotation and internal brackets omitted). Tafoya hinges her argument on element four, but fails to show she satisfied this element.[22]

For Tafoya to have established a triable issue over her alleged *prima facie* case based on an allegedly similarly situated comparator, it must be shown that, at the time of Tafoya's termination, that comparator was "similar in all *material* respects" to Tafoya. *Lucero v.*

---

[22] Tafoya has not sought application of a cat's paw theory to satisfy *McDonnell Douglas* step 1, or that she has satisfied her *prima facie* case through "evidence of age preference" besides as purportedly shown through a singular alleged similarly situated comparator analysis. *See* Opening Brief, pp. 21-22, 30-33. She accordingly has waived any such belated argument she may try to assert in her Reply. *See* Argument, Point I, *supra; GeoMetWatch*, 38 F.4th at 1207.

*Sandia Corp.*, 495 F. App'x 903, 909 (10th Cir. 2012) (unpublished) (emphasis in orig., quotation omitted); *see MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005). Several factors thus must be considered as to whether Daniel is such a comparator, including whether Daniel: (1) "dealt with the same supervisor"; (2) was "subjected to the same work standards; and (3) "engaged in the same conduct [as Tafoya] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *MacKenzie*, 414 F.3d at 1277.

Tafoya focuses on factor three, arguing Robinson treated Tafoya differently than Daniel because he allegedly knew of Daniel's purported misconduct, but failed to report the same before Tafoya's employment was terminated. *See* Opening Br. pp. 14-16, 21-22, 30-33. This is a forfeited argument that should be treated as effectively waived. *See* Argument, Point I, *supra.* This court also need not consider the argument because there is no competent record evidence that the decisionmaker (Trainor) and those few he consulted had knowledge of alleged same or similar misconduct by Daniel prior to Trainor deciding

to terminate, a key fact which Tafoya did not legitimately controvert below. *See* Statement of the Case, Sec. 1 & 2, *supra*. There is also no proof of Robinson having been involved in the decision-making. *Id.* It is further undisputed that neither Tafoya nor any other City employee reported or raised any concern about an alleged violation by Daniel during their investigative interviews with Parker, and that Trainor relied on that investigation and its findings in making his decision. *Id.*[23]

Daniel therefore cannot be found to have been similarly situated to Tafoya so as to satisfy factor three, as the actual decisionmaker, Trainor—*i.e.*, **not** Robinson—had no prior knowledge of Daniel's allegedly similar misconduct. *See Iweha*, 121 F.4th at 1232; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1121 (10th Cir. 2007). Such fundamentally differentiates the City's termination of Tafoya from anything involving Daniel. *See MacKenzie*, 414 F.3d at 1277. The focus of the *McDonnell Douglas* analysis is on "the intent of the

---

[23] Even if this court holds the district court's striking of Miller's declaration to have been an abuse of discretion, *but see* Argument, Point V, *infra*, her declaration does not support that any individual in City management, let alone the actual decisionmaker, suspected Daniel's alleged misconduct before Tafoya's termination. *See* App. Vol. 2 at 440.

decisionmaker" at the time of decision, and the City is unaware of any precedents of this court permitting application of "general principles of corporate liability" within the analysis inconsistent with that focus (like corporate knowledge or constructive notice doctrines). *Singh*, 936 F.3d at 1041.

Alternatively, this court should affirm the district court's holding of no triable issue at *McDonnell Douglas* step 1, because there is no triable issue that Daniel's alleged conduct was of comparable seriousness to Tafoya's. *See MacKenzie*, 414 F.3d at 1277.[24] Daniel is alleged to have shared confidential information with Tafoya, a fellow City employee. Tafoya, however, shared such with non-City employees, i.e. her husband and son. Even Tafoya admits some of her found violations of policy "would not apply to Ms. Daniel because [she] did not

---

[24] Even though the district court did not expressly reach this holding, or a holding on the lack of knowledge of Daniel's alleged misconduct by the actual City decisionmaker, this court can and should affirm on either or both grounds. This court has a "preference for affirmance" of a district court's decision "on any basis supported by the record… ." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). There is no question that the City preserved these arguments below and so this court can affirm on either or both grounds. *Id.*; App. Vol. 1 at 23-24; App. Vol. 2 at 459-462.

allegedly convey any confidential information to a family member." Opening Br. p. 32. Neither did Tafoya allege below, *see* App. Vol. 2 at 418-419, 421, nor does she allege now, *see* Opening Br. pp. 5-6, 11-16, 30-33, that Daniel had personal/familial reason/benefit and conflict of interest in her alleged misconduct that could support violations of City personal use and conflict of interest policies, like Tafoya's found misconduct. The result is that factually there is no triable issue that Tafoya and Daniel allegedly engaged in conduct of comparable seriousness given the important and admitted distinctions. *See, e.g., Gilooly v. Missouri Dept. of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005); *Newton v. Unified Government of Wyandotte Cnty. & Kansas City*, No. 17-cv-2043-JWL, 2018 WL 3122178, at *5 (D. Kan. Jun. 26, 2018); *Brooks v. CSX, Transp., Inc.*, No. 3:09-cv-379-J-25TEM, 2013 WL 12091685, at *12 (M.D. Fla. Mar. 29, 2013).

But even if this court were to review Tafoya's forfeited argument that Robinson allegedly knew of Daniel's potential misconduct, it still fails. There is no plain error in the district court having deemed Robinson's lack of knowledge admitted given Tafoya did not dispute

that below and, specifically, did not "properly controvert" that fact within the SSOF. *Kulasa v. Wyndham Vacation Rentals N.A., LLC*, No. 20-1402, 2021 WL 3832343, at *2 (10th Cir. 2021) (unpublished) (citing F.R.C.P. 56(e)(2)); *see* F.R.C.P. 56(c)(1)(A); *Milam v. Pafford EMS*, 729 F. App'x 632, 636 (10th Cir. 2018) (unpublished); *Tadlock v. Lahood*, 550 F. App'x 541, 546-47 (10th Cir. 2013) (unpublished).[25] Tafoya's failure to properly qualify or dispute Robinson's alleged lack of knowledge with citation to supportive admissible evidence, consistent with Fed.R.Civ.P. 56 and the district court's governing practice standards for the preparation of a SSOF, did not obligate the district court "to determine whether there exist[ed] dormant evidence which might require submission of the case to a jury." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (quotation omitted); *see* F.R.C.P. 56(c)(3) & (e)(3); D.C.COLO.MJ § V(10). "Judges are not like pigs, hunting for truffles buried in briefs." *Id.* (quotation omitted).

[25] Even under *de novo* review, the City submits that this analysis and these authorities foreclose Tafoya's argument.

With respect to Tafoya's "willful blindness" argument, *see* Opening Br. 32-33, 35 n.15, the City's own research has uncovered no authority applying "willful blindness" doctrine within a similarly situated analysis or otherwise to satisfy *McDonnell Douglas* step 1. While precedent does indicate recognition of the doctrine's application in certain civil litigation, *see, e.g., Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011), Tafoya cites no case recognizing its application in assessing a discrimination or retaliation claim under an employment civil rights statute, like the ADEA, and specifically within a similarly situated analysis. Moreover, Tafoya does not tackle the essential elements of proving "willful blindness," which requires a showing that the person claimed to have been willfully blind, first, "subjectively believe[d] that there [was] a high probability that [the] fact exist[ed], and second, "took deliberate actions to avoid learning of that fact." *Id.* Nowhere does the Opening Brief explain how the record demonstrates a triable issue over Robinson having consciously believed prior to the termination that there was a "high probability" that Daniel may have done something wrong like Tafoya and what "deliberate

actions" Robinson took to avoid learning the truth. *See* Opening Br. pp. 32-33, 35 n. 15.[26]

Robinson's alleged knowledge of Daniel's potential misconduct, *see* Opening Br. pp. 16, 31-33, 35 n.15, is nothing more than speculative assumption impermissibly stacking inference upon inference. *See* *GeoMetWatch*, 38 F.4th at 1205. Statements of counsel "… are not summary judgment evidence [and] cannot create an evidentiary dispute." *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1175 (10th Cir. 2005) (quotation omitted).[27]

---

[26] This court should reject as waived Tafoya's underdeveloped "willful blindness" argument, *see GeoMetWatch*, 38 F.4th at 1207, or it can reject it on other grounds, including a failure to marshal sufficient proof creating a triable issue.

[27] Tafoya challenges as "irrelevant" the district court finding that she "provided no other evidence demonstrating evidence towards a certain age group," *see* App. Vol. 3 at 674, arguing under *Bostock v. Clayton Cnty*, 590 U.S. 644, 658 (2020) that the ADEA "protects individuals, not groups, from discrimination." Opening Br. p. 20. *Bostock* involved a Title VII claim, rendering it inapplicable to Tafoya's pure ADEA claim. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *see Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1193-95 (11th Cir. 2024) (declining to apply *Bostock* to claims not subject to motivating factor analysis). More broadly, nothing about *Bostock* changes whether such evidence can be part of the mosaic of circumstantial and indirect evidence that can together support or refute the existence of a triable

## IV. The District Court's Summary Judgment Dismissal of Tafoya's ADEA Claim Should be Affirmed Because There is No Triable Issue at *McDonnell Douglas* Step 3.

At *McDonnell Douglas* step 3 of an ADEA claim, it is Tafoya's burden to show the City's justifications for terminating her employment for violation of City policy was pretext for unlawful age discrimination. *Jones*, 617 F.3d at 1278. Below Tafoya focused her cat's paw theory entirely on a claim of pretext. *See* Opening Br. pp. 22, 30, 34-37; App. Vol. 2 at 422-423.[28]

Under Tenth Circuit law, given the requirement of but-for causation, *Markley v. U.S. Bank Nat. Assoc.*, 59 F.4th 1072, 1081 & n.7 (10th Cir. 2023), for Tafoya's argument to have succeeded before the district court, Tafoya had to show by admissible evidence that there was a:

---

issue of fact at *McDonnell Douglas* step 1 or 3. *Bostock* neither addresses the application of *McDonnell Douglas* nor the requisite analysis to determine whether indirect or circumstantial evidence allows a discrimination claim to be sent to the jury. *See Bostock*, 590 U.S. at 655-83.

[28] Tafoya has thus waived any other argument for satisfying *McDonnell Douglas* step 3 on this appeal. *See* Argument, Point I, *supra; GeoMetWatch*, 38 F.4th at 1207.

> genuine issue of material fact that (1) the subordinate took action motivated by discriminatory … animus; (2) the subordinate intended the action to cause an adverse employment action; and (3) the subordinate's action was the but-for cause of the intended adverse employment action.

*Sellman v. Aviation Training Consulting, LLC*, 155 F.4th 1215, 1223 (10th Cir. 2025) (cat's paw theory elements on discrimination claim requiring but-for causation).

Even if Tafoya could establish elements one and two, she still fails to establish a triable issue under element three.[29]

"The key element of a successful cat's paw theory of pretext is an unbroken causal chain connecting the biased employee's action to the unbiased decisionmaker's adverse decision." *Iweha*, 121 F.4th at 1228 (citation omitted). "A cat's paw theory can be defeated by showing a break in the causal chain, or a lack of uncritical reliance by the unbiased decisionmaker." *Id.* "The most common way to make this showing is by establishing that the employer conducted an independent

---

[29] Even if the court had never reached this issue, *but see* App. Vol. 3 at 674 (footnote 4), this court may affirm on this "basis supported by the record… ." *Richison*, 634 F.3d at 1130.

investigation of the allegations against an employee to verify the biased employee's claims." *Id.* (citations omitted).

Tafoya's cat's paw theory, both below and to this court, does not assert that Parker's investigation, on which Trainor relied on in deciding to terminate Tafoya's employment, harbored personal discriminatory bias toward Tafoya. *See* Opening Br. pp. 8-12, 34-37; App. Vol. 2 at 422-423. Parker's investigation did not just rely on the multiple co-workers personally involved in the underlying event who were interviewed, or relevant documentation submitted, but rather also relied on Tafoya's own admissions in her interview, which substantiated her violations of City policy. *See* App. Vol. 1 at 37-41 (Facts 39-42, 46-48, 52-53); App. Vol. 2 at 351-359 & 450. There is also no dispute from the record that Parker was unaware of Daniel's alleged misconduct and that no one, including Tafoya, disclosed it to Parker during the investigation. *See* App. Vol. 1 at 37-41, 48, 53-56, & 58-59 (Facts 39-42, 46-48, 52-53, 87, 100, 105, 108-112, 119-123); App. Vol. 2 at 351-359. There is likewise no record support, *see id.,* for Parker having "performed" her investigation "animated by discriminatory bias

against" Tafoya. *See Iweha*, 121 F.4th at 1230; *Sellman*, 155 F.4th at 1224; *see also Thomas v. Berry*, 803 F.3d 510, 514-15 (10th Cir. 2015); Statement of the Case, Sec. 1 & 2, *supra*.

Parker's independent fact-based investigation of Tafoya, which resulted in the report's findings that Tafoya committed multiple City policy violations, and Trainor's reliance on that report to reach his termination decision, necessarily breaks the causal chain and refutes Tafoya's cat's paw theory. As Tafoya was an at-will employee, the found "specific and detailed" policy violations provided more than sufficient non-discriminatory support for Trainor's decision. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020). Tafoya "does not argue, and there is no evidence to suggest," the investigation was "a sham," that the investigation did not comply with City investigation policies, or that the City's investigation policies' themselves are "flawed… ." *Thomas*, 803 F.3d at 517 (citations omitted); *see* Opening Br. pp. 34-37. The investigation allowed Tafoya "to offer … her side of the dispute," which "does support … [the] investigation [was]

independent and not controlled by biased, discriminatory allegations of coworkers." *Iweha*, 121 F.4th at 1231.

Tafoya argues that the City asked Parker to investigate Tafoya, but not Daniel, and so that was the scope of the investigation. *See* Opening Br. at pp. 11-13; App. Vol. 2 at 418-419, 421 n.5. However, Tafoya absolutely could have and should have raised all facts relevant to her communications and/or related misconduct she believed had occurred. Further, it is not any court's role to "judge whether … [the] investigation was optimal—in its scope or components—or whether it arrived at the right conclusion … ." *Id*. at 464 n. 7; *see Markley*, 59 F.4th at 1082-83, 1088 (identified "additional investigatory steps" that "could have been taken" by investigation did not establish pretext).[30] Again,

---

[30] Tafoya separately argues, based on Miller's stricken declaration, that Miller "was not even consulted (as policy required), regarding the recommended termination." Opening Br. p. 36 n.16. Assuming *arguendo* this court considers this claim, *but see* Argument, Point V, *infra*, such does not create an imperfection or irregularity in the investigation itself. Moreover, Tafoya made no argument that Miller should have been interviewed within the investigation to the court below or before this court. *See* App. Vol. 2 at 417-424; Opening Br. pp. 11, 13-14, 34-37. Consequently, any such argument by Tafoya has been forfeited and, also, waived. *See* Argument, Point I, *supra*; *GeoMetWatch*, 38 F.4th at 1207.

there is no dispute that the investigator or any other City supervisor, other than allegedly Robinson, knew about Daniel's purported misconduct. *See* Statement of the Case, Sec. 1 & 2, *supra*.

Consequently, there is simply no evidentiary support in the record to conclude there is a triable issue that Trainor "blindly accepted" and "rubber-stamped" any information, opinion, or recommendation from Robinson in deciding to terminate Tafoya's employment. *See, e.g., Iweha*, 121 F.4th at 1231; *Markley*, 59 F.4th at 1085-86; *Thomas*, 803 F.3d at 517-18. It is not enough that Robinson reported the alleged underlying misconduct and provided information during the investigation, which is all that occurred. The City is aware of no precedent standing "for the rather unusual proposition that a supervisor" like Robinson "should not express an opinion about a subordinate's conduct and the disciplinary consequences therefrom during any investigation into that subordinate." *Markley*, 59 F.4th at 1085. A showing that the investigator (or the City Manager, Department Head, Human Resources Director, or City Attorney) "took" Robinson's report and/or opinions "into account does not necessarily

mean that [Robinson] was a *proximate cause* of" Tafoya's employment termination. *Singh*, 936 F.3d at 1039 (emphasis in orig.); *see also* *Sellman*, 155 F.4th at 1223-24; *Thomas*, 803 F.3d at 517 & n.9.[31]

Indeed, even if there was a triable issue over whether the investigator uncritically relied on Robinson's reporting and opinions in making her findings, there is insufficient record proof of Trainor having failed to conduct his own independent assessment of the investigator's report in deciding to terminate Tafoya's employment, or otherwise uncritically relied on Robinson's reporting and/or opinions to reach the decision. *Iweha*, 121 F.4th at 1230 ("An independent assessment by *either*" the investigator or the decision-maker "break[s] the link in the causal chain… .") (emphasis in orig.).

It bears repeating that there is no dispute Trainor was unaware of Daniel's alleged misconduct, and so were the Human Resources Director, City Attorney, and Department Head, *i.e.*, the only ones that

[31] As noted in the Statement of the Case, Sec. 1 & 2, *supra*, there is simply no record proof that Parker expressly, let alone solely, relied on information provided and any opinions of Robinson in reaching her findings.

Trainor consulted in reaching his decision. *See* Statement of the Case, Sec. 2, *supra*. Trainor's consultation with them, in addition to his own review of the investigation findings, shows he did not uncritically rely on and simply rubberstamp anything from Robinson. While Tafoya complains that Miller was excluded from the termination decision, *see* Opening Br. p. 36, even if this court considers that, *but see* Argument, Point V, *infra*, it has no bearing on whether Trainor uncritically relied on the investigator's findings or allegedly biased reporting and opinions of Robinson.[32]

---

[32] As the City showed below, City policy excluded Miller from being involved in the termination decision, as she was not the Department Head, City Attorney, City Human Resources Director, or City Manager *See* App. Vol. 1 at 175 (§72.8). Robinson, like Miller, was excluded from involvement in Trainor's decision for this same reason. *See id.* at 47 (Fact 81); App. Vol. 2 at 433 (8:20-9:23, 10:18-11:6). Tafoya continues to mischaracterize the testimony of Trainor as saying Miller should have been involved in his decision-making process in contradiction of City policy. *See* Opening Br. p. 36. That testimony instead, consistent with City policy, confirmed Miller would have been involved—in more limited fashion—in the discussions of and preparation of the corrective action form provided to Tafoya, as Miller's signature on the form's supervisor's signature line indicates occurred. *See* App. Vol. 2 at 367, 432 (7:5-13).

Further supporting Trainor's independent assessment is the fact that the investigation substantiated policy violations, but did not specifically recommend a form of discipline. *See* App. Vol. 2 at 351-359. There is simply no record evidence that Trainor or anyone he consulted were "animated by discriminatory bias against" Tafoya. *See Iweha*, 121 F.4th at 1230. All that has been alleged by Tafoya is that Robinson's reporting and opinions were part of the investigation, which is insufficient to establish "uncritical reliance" on summary judgment. *Singh*, 936 F.3d at 1039; *Sellman*, 155 F.4th. at 1223-24; *Thomas*, 803 F.3d at 517 & n.9.

This court can and should affirm the district court's dismissal of Tafoya's ADEA claim, under element three, for lack of a triable issue over proximate causation. But even if this Court addressed Tafoya's argument under element one, this court will find it untenable. Whether under plain error or *de novo* review, there is no reasonable inference of Robinson having discriminatory animus toward or bias against Tafoya. Specifically based on a comparison to Daniel when, on this record, there is insufficient proof of Tafoya and Daniel being similarly situated and

Robinson having knowledge of Daniel's potential misconduct prior to Tafoya's termination – and Tafoya has never legitimately controverted the same, whether below or to this court. *See* Argument, Points I & III, *supra.*

Further, even if this court considers the stricken declaration of Miller, *but see* Argument, Point V, *infra*, the undated and generalized purported remark by Robinson about him not wanting "someone older to be the administrative assistant," Opening Br. p. 36 n.16, is by Miller's own admission not even about Tafoya. *See* App. Vol. 2 at 440. Even if true, such a stray remark and isolated or ambiguous comment of this sort is "too abstract … to support a finding of age discrimination." *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (quotation omitted); *see also Mauldin v. Driscoll*, 136 F.4th 984, 997 (10th Cir. 2025). There is also an insufficient "nexus" between that alleged statement and Tafoya's termination, as required. *See Cone*, 14 F.3d at 531-32.[33]

---

[33] Miller's vague and conclusory assertion that she resigned months after the termination of Tafoya's employment because "younger

## V. The District Court Soundly Exercised its Discretion in Striking Miller's Declaration.[34]

To the extent this court reviews this issue, the district court properly exercised its sound discretion when it struck Miller's declaration because of Tafoya's failure to comply with her disclosure obligations under Fed.R.Civ.P. 26 concerning Miller.[35] The court did not make an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment" in finding a Rule 26 violation. *See Nalder v. West Park Hosp.*, 254 F.3d 1168, 1174 (10th Cir. 2001). Tafoya's argument improperly seeks this court to "substitute" its judgment for that of the district court. *See id.*

---

employees" in the Utilities Department were allegedly manipulating supervisors against older Department employees is insufficient on summary judgment to create a triable issue of fact. *See, e.g., Bird v. West Valley City*, 832 F.3d 1188, 1206-07 (10th Cir. 2016). This is especially true given the lack of specifics provided and admissible record evidence clarifying whether Robinson is one of the allegedly referenced "younger employees." *See* App. Vol. 2 at 440.

[34] As this issue is not outcome determinative, for the reasons discussed above, *see* Argument, Points I-IV, *supra*, this court need not review.

[35] Tafoya's argument does not attack any aspect of the district court's application of Fed.R.Civ.P. 37 or the *Woodworker's Supply* factors, only its finding of a violation of Fed.R.Civ.P. 26, *see* Opening Br. pp. 38-46, thus waiving any such belated arguments in reply. *See GeoMetWatch*, 38 F.4th at 1207.

The sufficiency of Fed.R.Civ.P. 26(a)(1) fact witness disclosures is not a new issue for Tenth Circuit courts. Those who have persuasively spoken on the matter, particularly the District of Colorado, have concluded that given the intent and purposes of mandatory Rule 26(a)(1) fact witness disclosures, a "disclosing party must provide more than a perfunctory statement that the identified person has information 'about the case.'" *Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 2593485, at *5 (D. Colo. Sept. 5, 2007); *see Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004); *EEOC v. Chipotle Servs., LLC*, No. 23-2439-KHV, 2024 WL 4948888, at *16-17 (D. Kan. Dec. 3, 2024); *see also Poitra v. School Dist. No. 1*, 311 F.R.D. 659, 663-64 (D. Colo. 2015).

Here, Tafoya's disclosure as to Miller was perfunctory, only identifying Miller in a conclusory, vague, and generalized fashion that she would testify about "how plaintiff performed her job and why she was terminated." App Vol. 3 at 573. That disclosure is materially different from that solicited by Tafoya through the untimely declaration, which involved statements about an alleged age-based City hiring preference, policy compliance, and workplace dynamics involving

"younger employees." *See* App. Vol. 2 at 440. The declaration demonstrates Tafoya's incomplete disclosure. *See Lobato*, 2007 WL 2593485 at *5; *Chipotle Servs.*, 2024 WL 4948888 at *17.[36]

Further compounding the issue is, as discussed above, *see* Statement of the Case, Sec. 3, *supra*, Tafoya gave sworn responses and testimony in discovery that disclaimed knowledge of Miller's statements and contradicted her Rule 26(a)(1) disclosure of Miller. Tafoya also failed to act with reasonable diligence to solicit the at-issue statements from Miller before the discovery cut-off and seasonably supplement her Rule 26(a)(1) disclosure and interrogatory responses based on what she obtained. *See id.*

[36] Tafoya's incomplete disclosure of the subjects of Miller's testimony distinguishes it from the plaintiff's witness disclosure in *Kluth v. Spurlock*, No. 21-cv-03417-NYW-SBP, 2024 WL 6475455, at *5 (D. Colo. Apr. 29, 2024), which involved a plaintiff generally disclosing a witness to have knowledge of the plaintiff's "work history and performance," just not specific the "subcategories" of the same. It also materially distinguishes the disclosure from the defendant's disclosure in *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D. 561, 568 (D. Colo. 2010), a decision that only focused on the lack of specificity of the subjects of the disclosed witness's testimony, not the disclosed witness post-discovery testifying to or submitting sworn statements squarely outside the perfunctory subjects of their testimony previous disclosed (as the decision arose from a motion to compel).

Instead, Tafoya appears to have tactically delayed for the purpose of trying to catch the City off-guard on summary judgment, in violation of her obligations under Fed.R.Civ.P. 26(e). *See Sender*, 225 F.R.D. at 653-54 (citations omitted).[37] As soon as Tafoya responded to the City's interrogatories and gave deposition testimony, her obligation to supplement her prior Rule 26(a)(1) disclosure of Miller was triggered. Tafoya reasonably should have inquired of Miller and thereafter supplemented before the discovery cut-off if Tafoya wished to use such information without violating Rule 26(a)(1) and (e). *See Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 299 (D. Colo. 2014); *see also Sender*, 225 F.R.D. at 653. That supplementation obligation had to be discharged "in a timely manner." F.R.C.P. 26(e)(1)(A); *see Poitra*, 311 F.R.D. at 666. Instead of complying, Tafoya waited until about two months after the discovery cut-off and solely in response to summary

[37] The district court's order does not explicitly find a violation of Tafoya's obligation to supplement under Rule 26(e) in her belated attachment of Miller's declaration after the discovery cut-off. *See* App. Vol. 3 at 663-666. But such finding is implicit in the court's reasoning. *See id.* In any event, the court's ruling can be affirmed for a Rule 26(e) violation irrespective of whether the court reached the issue. *See Richison*, 634 F.3d at 1130.

judgment, to share Miller's declaration. Such was not even done as part of any supplemental Rule 26(a)(1) disclosure or supplemental interrogatory response and without any evidence supporting the improper delay.

The only reason for such delay was so that Tafoya could try to improperly gain an advantage on summary judgment and flout the "purpose of Rule 26 disclosures … to allow [the City] enough time to conduct interviews and depositions … ." *Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09-cv-02080–REB–KLM, 2011 WL 721263, at *3 (D. Colo. Feb. 23, 2011) (citations omitted); *see Sender*, 225 F.R.D. at 655. "Rule 26(e) creates a duty to supplement, not a right, and does not create a loophole to be exploited by a party to its advantage." *Poitra*, 311 F.R.D. at 664 (quotation omitted). Tafoya's litigation strategy of incorrectly disclosing Miller's relevance and delaying supplementation smacks of her having "indulg[ed] in gamesmanship with respect to [her] disclosure obligations" in violation of Rule 26. *Lobato,* 2007 WL 2593485 at *5.

Refuting Tafoya's arguments, *see* Opening Br. pp. 39-40, 45, there is no dispute amongst Tenth Circuit courts that "Rule 26(a)(1) does not permit a party to avoid its mandatory discovery obligations by arguing that the other side could have relied on its own resources to obtain the same information." *Lobato*, 2007 WL 2593485 at *6; *see Spacecon*, 2011 WL 721263 at *3; *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1224 (D. Kan. 2007). Tafoya also baldly speculates that "accept[ing] the trial court's reasoning would mean that a clever (and daring) attorney could conduct no discovery and at trial object to a witnesses' testimony beyond that which was disclosed." *See* Opening Br. p. 39. Such is not implicated on this appeal, for the City engaged in discovery on the very subject of Miller's knowledge relevant to this case and reasonably relied on Tafoya's testimony and responses to interrogatories.[38]

Finally, the case of *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185 (9th Cir. 2022), cited by Tafoya, *see* Opening Br. pp. 39 n. 21 & 45-46, is

---

[38] Tafoya's argument also ignores the backstop of substantial justification/harmless error analysis under Rule 37 and the general bar on discovery gamesmanship under Rule 26, each which can act to prevent that objection from ever being improperly sustained. *See, e.g., Wilkins*, 487 F. Supp. 2d at 1224; *Poitra*, 311 F.R.D. at 668-71.

both materially distinguishable and unpersuasive, and should not be followed because it is inconsistent with the law of the Tenth Circuit. The court below explicitly struck Miller's declaration for being both perfunctory **and** incomplete in violation of Rule 26(a)(1) and, implicitly, for the belated timing of the declaration's submission post-discovery cut-off being a violation of Tafoya's Rule 26(e) supplementation obligation. App. Vol. 3 at 666. *Brodeur* did not consider the sufficiency of the perfunctory, vague, and generalized nature of the at-issue disclosure in the lawsuit's context, consistent with the purpose of Rule 26(a)(1) disclosures. *See* 41 F.4th at 1190-93. Neither did *Brodeur* evaluate any need, based on that case's history, for the disclosing party to have supplemented their witness disclosure before the discovery cut-off. *See id.* Such analytical failures are inconsistent with the persuasive case law developed in the Tenth Circuit discussed above. *See id.*

Given the prevailing law was reasonably applied by the district court, it was not an abuse of discretion for it to have stricken Miller's declaration.

## CONCLUSION

For the reasons recounted above, the district court's dismissal of Tafoya's ADEA claim against the City and related rulings should be affirmed in their entirety.

## STATEMENT AS TO ORAL ARGUMENT

Oral argument is not requested because any of the issues are novel. Rather it is requested in light of the number of liberties taken by Tafoya in her Opening Brief and concerns that similar liberties may be taken in the Reply. Should such occur the City would like the opportunity to respond/rebut such in oral argument.

DATED: January 12, 2026.

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Daniel A. Jacobs
NATHAN DUMM & MAYER P.C.
7900 East Union Avenue, Suite 600
Telephone: (303) 691-3737
Mkloster@ndm-law.com
Djacobs@ndm-law.com

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12673 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook.

DATED: January 12, 2026

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Daniel A. Jacobs
*Attorneys for Defendant-Appellee*
NATHAN DUMM & MAYER P.C.
7900 East Union Avenue, Suite 600
Telephone: (303) 691-3737
Mkloster@ndm-law.com
Djacobs@ndm-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord Street
Denver, CO 80206
Tel.: (303) 319-8382
Email: rliechty@crossliechty.com
*Attorney for Plaintiff-Appellant*

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Daniel A. Jacobs
*Attorneys for Defendant-Appellee*
NATHAN DUMM & MAYER P.C.
7900 East Union Avenue, Suite 600
Telephone: (303) 691-3737
Mkloster@ndm-law.com
Djacobs@ndm-law.com